## BEER *v.* UNITED STATES (No. 73).[1]

1. SECTION 11, CUSTOMS ADMINISTRATIVE ACT OF 1890.

  That part of section 11, customs administrative act of 1890, relating to the proper ascertainment of dutiable value by an inquiry as to the sale price of the commodity in the United States, is a definition of the powers granted appraising officers in appraisement proceedings, and there is nothing contained there to limit the scope of that provision to cases where no foreign market value appears; it seems rather in fact intended to aid appraising officers to ascertain true foreign market values.

2. SAME—DOMESTIC WHOLESALE PRICE AS A GUIDE.

  It is not unfair to the importer to employ, as a basis for computing what was the true value of the commodity on export abroad, the wholesale selling price of a commodity fixed by himself, and the very language of the statute authorizes this to be done.

3. AN APPRAISEMENT BY BOARD OF THREE GENERAL APPRAISERS.

  Where a board of three general appraisers, with jurisdiction of the subject matter and the persons, have proceeded in conformity to law to appraise an importation of goods, their finding is not reviewable by any classification board or by this court.

4. VALIDITY OF PRECEDING APPRAISEMENTS.

  If a reappraisement by a board of general appraisers be held valid it is unnecessary to inquire into the validity of preceding appraisements of the same merchandise.

United States Court of Customs Appeals, April 17, 1911.

TRANSFERRED from United States Circuit Court for Southern District of New York, G. A. 6788 (T. D. 29144).

[Affirmed.]

*Curie, Smith & Maxwell (W. Wickham Smith* of counsel) for appellant.

*D. Frank Lloyd,* Assistant Attorney General (*William A. Robertson* on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

The importer, appellant here, assails the validity of the appraisement, reappraisement, and re-reappraisement of certain embroidered robes.

Concededly, the principal market of the country for such merchandise was St. Gall. There is no controversy as to the rate of duty applicable, but the question here raised concerns the validity of the different appraisement proceedings.

It is contended by the appellant that each and all of the appraisements were invalid for two reasons: First, that neither the imported merchandise nor the legal packages or samples were before any of the appraising officers at the time appraisement was had; second, that the appraising officers based their appraisement in each case upon the wholesale price at which the goods were sold in this country and not the country of exportation. The board held as to the first point that the evidence showed that proper samples were before

---

[1] Reported in T. D. 31526 (20 Treas. Dec., 800).

the appraising officers in all the appraisement proceedings and were duly examined by them. On appeal to this court the appellant abandons that contention, stating that the testimony in that particular was conflicting. We fully concur in the finding of the classification board of general appraisers upon this point. The record shows, in our opinion, without serious contradiction, that not only were the requisite number of packages within section 2901 of the Revised Statutes before the board, but out of an abundance of caution and a commendable desire to arrive at a fair and just market value of the merchandise the board called for and examined additional samples which were produced by the importer. The testimony of Mr. D. P. Dutcher in this particular, while it referred to matters occurring several years before, is so amply supported by the reasons assigned by him for accurate memory in the particular cases that it is thoroughly convincing. We think the record shows beyond controversy that there were before the board and proper examination thereof made of requisite samples for jurisdictional purposes.

If the re-reappraisement by the Board of General Appraisers was valid, inquiry as to the validity of preceding appraisements is unnecessary. We, therefore, confine our discussion of the case in the main to the proceedings before the board of three general appraisers, which, if conducted in conformity with the modes prescribed by the law, is final, and not the subject of review by any classification board of general appraisers or by this court.

The case of the appellant, as stated in his brief, in substance is, that the local appraisers sent for the importer and demanded of him the price in dollars and cents at which he, the appellant, had sold the goods in the United States; that this was furnished and was put in evidence in the proceedings before the board; that the local appraiser then proceeded to work back from this American selling price to an estimated foreign value in accordance with a definite formula. A copy of this formula was put in evidence and also the calculations based thereon as applied to the American selling price. The prices fixed by the local appraiser were adopted both by the general appraiser and the Board of General Appraisers without change.

It is maintained that this procedure was in violation of the provisions of section 11 of the customs administrative act of 1890, as amended and in effect at the time of these appraisement proceedings. Section 11 at that time was as follows:

SEC. 11. That when the actual market value, as defined by law, of any article of imported merchandise wholly or partly manufactured and subject to an ad valorem duty, or to a duty based in whole or in part on value, can not be otherwise ascertained to the satisfaction of the appraising officer, such officer shall use all available means in his power to ascertain the cost of production of such merchandise at the time of the exportation to the United States, and at the place of manufacture; such cost of production to include the cost of materials and of fabrication, all general expenses cover-

ing each and every outlay of whatsoever nature incident to such production together with the expense of preparing and putting up such merchandise ready for shipment, and an addition of not less than eight nor more than fifty per centum upon the total cost as thus ascertained; and in no case shall such merchandise be appraised upon original appraisal or reappraisement at less than the total cost of production as thus ascertained. *It shall be lawful for appraising officers, in determining the dutiable value of such merchandise, to take into consideration the wholesale price at which such or similar merchandise is sold or offered for sale in the United States, due allowance being made for estimated duties thereon, the cost of transportation, insurance, and other necessary expenses from the place of shipment to the United States, and a reasonable commission, if any has been paid, not exceeding six per centum.*

The appellant contends that the last provision of section 11 did not authorize taking into consideration the market value of imported merchandise in this country except in cases where there was no foreign market value, and, as they claim to have shown a market value at St. Gall for such embroideries, that the invoking by the appraising officers of section 11 was in violation of law. We are unable to concur in the premises of this conclusion.

Section 11, as then in force, appears to have been a divisible section.

Without discussing the cases to which the first portion thereof is applicable, the second portion appears an independent definition of the powers granted an appraising officer in appraisement proceedings. There is nothing in the paragraph which limits the exercise of that provision to cases where there is no foreign market value, but it seems a general provision intended as an aid to appraising officers in the ascertainment of foreign market value. "Such" in the last paragraph would seem to be referable to "any article of imported merchandise" without qualification. In any event the only qualification in either paragraph is not the *absence* of foreign market value, but that foreign market value "can not be otherwise ascertained to the satisfaction of the appraising officers."

The appellant further insisted that the appraising officers did not legally follow the method prescribed by section 11, the claim being that taking into consideration the actual price at which the merchandise actually imported was sold at wholesale in this country, and working back by deduction by the methods prescribed in the statute, was not a compliance with the provision requiring that the wholesale price at which *such or similar merchandise* was offered for sale in the United States. The claim is that the language of the statute excludes the right of appraising officers to take into consideration the wholesale price at which the precise merchandise was sold, but they are to take into consideration prices at which similar merchandise was marketed in the United States. We are unable to concur in this view. No better test, certainly no fairer test to the importer, could have been had as a basis of proceeding under this law than the wholesale price of the precise importation as sold by the importer himself, and that we deem within the very language of the statute

authorizing the appraiser to take into consideration the wholesale price of "such" merchandise.

The Board of General Appraisers found, and we think properly, that there was not sufficient evidence in the record going to prove the provisions of section 11 were not followed by any of the appraising officers, and particularly the board of three general appraisers. We think that finding of the board amply supported by the record. Moreover, in our view of the law covering appraisement proceedings it was unnecessary for the board of three general appraisers to have gone further in order to give them jurisdiction and render their appraisement proceeding valid than the statement of the actual proceedings of the board in the appellant's brief as his case of complaint against the same.

When it is stated by the appellant in effect that the board of three general appraisers received in evidence the wholesale price at which the imported merchandise was sold in this country and proceeded therefrom *as a basis* to work back from that selling price to ascertain the foreign dutiable value, making all the deductions allowed by section 11, although thereafter proceeding in accordance with a formula which had been gotten up for such cases, the board acted fully within its legal prerogatives. That is to say, the board had jurisdiction of the subject matter of the proceeding by virtue of the statute giving them final appellate jurisdiction in appraisement cases; that they had jurisdiction of the persons interested in the proceeding must be assumed from the fact that the importer was present in person and by counsel; and that having jurisdiction of the subject matter and of the persons, and having proceeded in accordance with the methods prescribed by the statute and regulations for appraisement proceedings, that appraisement was in our opinion a valid appraisement. Whatever evidence was accepted by the board so acting, whatever formulas may have been adopted by them in their efforts to ascertain the dutiable value prescribed by statute, if they had fully complied with the mandatory requirements of the statute and regulations, are not reviewable by any classification board of general appraisers or by this court. The decisions of the courts upon this point are uniform.

It will be noted in passing that it is conceded by the appellant that all of the proceedings and formulas of the board were devoted to the end of the ascertainment of a wholesale foreign market value in the country of exportation, and that the board is not here charged, nor does the evidence in the record in anywise indicate, that the board endeavored to adopt the American wholesale price as the dutiable value of the goods. They only considered the American wholesale price, if at all, as a basis from which they proceeded in all respects as authorized by the statute to the ascertainment of a foreign market value. It likewise appears that in the ascertainment of this foreign market

value the board not only made the deductions provided by section 11, but they made further calculations in that effort by virtue of a divisor based upon some method of calculation, which does not appear in this record, which was satisfactory to them and which is not the subject of review under the circumstances by this court.

What force and effect the board gave to the direct evidence of foreign market value which was in the record, what formula they may have adopted in seeking to ascertain that value after having complied with section 11 by adverting to the American wholesale price, and whether they gave one or the other classes of evidence thus ascertained predominant effect are beyond the matter of review by this court.

In Passavant v. United States (148 U. S., 214–220) the Supreme Court observed:

The provisions of the customs administrative act of June 10, 1890, as to the *finality and conclusiveness* of the decision of the Board of General Appraisers as to the valuation of imported merchandise, when that question has been regularly submitted to and examined by them, is expressed in *clearer and more emphatic terms than in former statutes.*

The case of Muser v. Magone (155 U. S., 240) is equally if not more applicable. That case involved the appraisement of similar merchandise also imported from St. Gall. In that case, after much disturbance in the trade generally and seemingly insuperable difficulties had been encountered in the ascertainment and fixing of a fair dutiable market value of such merchandise, owing to the fact that there were no sales of the completed article in the country of exportation, the committee appointed by representatives of the Treasury Department and the importers of such merchandise in the United States agreed upon a formula to be exercised by appraising officers in the ascertainment of such values. Values fixed by that formula have since come to be known as the "stitch-rate" values. Its legality and the right of appraising officers to exercise the same under the statute in the ascertainment of dutiable market value was assailed, and that question eventually reached the Supreme Court of the United States.

Speaking of the same, that court said (p. 251):

The presumption is that a sworn officer, acting in the discharge of his duty, upon a subject over which jurisdiction is given him, has acted rightly, and there is nothing in this record which, in the slightest degree, tends to indicate that the general appraiser did not endeavor by all reasonable ways and means to arrive at the true and actual market value. Among such ways and means are market price or the quotations for a given day; amounts realized on sales, public and private; and in some instances the cost of production. The course of business at St. Gall in respect of these embroideries was peculiar, and to reach a result, in estimating the value, required the consideration of many elements making up the amount which actually represented the pecuniary basis of transactions. How these various elements impressed the general appraiser, and what grounds influenced or controlled his mental processes, were matters in respect of which he could not be interrogated, since his decision, when approved by the collector, was final, and could not be reviewed, and the verdict of a jury substituted.

The concluding language of the court is too pertinent to the present case to be omitted (p. 252):

The proper evidence of the decision of the appraisers and of the collector was to be found *in their official returns*, and if they acted without fraud and within the powers conferred on them by statute, their decision could not be impeached by requiring them to disclose the reasons which impelled their conclusions or by proving *remarks they may have made in the premises*.

The official return of the Board of General Appraisers in this case was as follows:

We have examined the following described merchandise, imported by H. S. Beer in the *La Gascogne*, from St. Gall, January 26, 1898, and do hereby certify that, in our opinion, the actual market value or wholesale price of the said goods, at the time of exportation to the United States, in the principal markets of the country whence imported, was, and we do hereby appraise the same, as follows.

While this court finds it unnecessary in this case to express an opinion as to the conclusiveness against impeachment by testimony of this return of the board, we think the facts and law of this case leaves that finding of the board unimpeached.

*Affirmed.*

MONTGOMERY, Presiding Judge, and SMITH, BARBER, and MARTIN, Judges, concur.