## TILGE *v.* UNITED STATES (No. 274).[1]

PETITION FOR REHEARING DENIED.

Reviewing the decision in Tilge & Co. *v.* United States (T. D. 31507), the decision is adhered to. The court did not there hold an appraising officer had no jurisdiction to appraise any of the merchandise of a consignment unless he had examined the samples deposited at the public stores, nor did it hold that samples forming a part of the importation can not, when duly authenticated, be accepted by appraising officers for jurisdictional purposes. It was there held, however, that no process was permissible "other than the law provides"; and that while the law provides substitute processes, compliance with any of these was not averred in the case as presented for determination here, and the decision as rendered was based simply on noncompliance with the law's requirements. What would or would not constitute a proper waiver or stipulation to avoid the stricter operation of the statute will depend on the facts of record in the particular case.

### United States Court of Customs Appeals, May 31, 1911.

PETITION on behalf of the Government for rehearing in Tilge & Co. *v.* United States (T. D. 31507).

[Denied.]

*D. Frank Lloyd,* Assistant Attorney General (*Martin T. Baldwin* on the brief), for the petition.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

PER CURIAM: This is on a petition for a rehearing. This case, decided April 10, 1911 (1 Ct. Cust. Appls., 462; T. D. 31507), was,

---

[1] Reported in T. D. 31676 (20 Treas. Dec., 1249).

as appears in the decision thereof, "argued before this court and submitted with the case of Loeb & Schoenfeld (suit 69), previously decided (1 Ct. Cust. Appls., 385; T. D. 31479). In that case we reviewed the law applicable to both cases."

The petition recites:

1. The decision of the court lays down the proposition that a general appraiser has no jurisdiction to reappraise any of the merchandise on an invoice, unless he has personally examined the particular package or packages (at least 1 of every 10 on the invoice) that have been designated by the collector to be sent to the public stores, in accordance with section 2901 of the Revised Statutes.

The court holds that there is no permissible legal substitute for this examination, and that no samples of the imported merchandise, however clearly proven as representing it or as being a part of it, can avail to give the general appraiser jurisdiction over the invoice.

It is evident that counsel has misapprehended the scope of the decision in the present case. What was decided is determined by the question at issue in the case. As was said by Lord Manners in Revell v. Hussey (2 Ball & B., 286):

It is always unsatisfactory to abstract altogether the reasoning of the court in any reported case from the facts to which this reasoning is meant to apply; it has a tendency only to misrepresent one judge and to mislead another.

In the Loeb & Schoenfeld case the whole importation was the subject of appraisement and the appeals therefrom. It was conceded and the board found that—

One package in every 10 and 1 package from every invoice was sent to the public stores, and the merchandise therefrom, or sufficient samples of it, was before the local appraiser, the general appraiser, and the board of three general appraisers.

The board further found:

It does conclusively appear that a large number of the items upon the invoices here under consideration were not contained in the public-stores cases, nor was merchandise of like patterns and designs.

Upon this record, involving the entire importation, the importers tendered the issue and made claim that it was not sufficient for the board of three general appraisers to examine the public-store cases legally required under section 2901 of the Revised Statutes, but that in view of the finding of the board that some of the importation was not represented by the merchandise or samples thereof in the public-store cases the reappraisement proceeding by the board was invalid for want of jurisdiction.

This court held that in such cases, if the reappraisement board examined the public-store cases only, which the record showed it did, there was a valid reappraisement.

The Tilge case was likewise an appeal to reappraisement involving the whole importation. The court said:

Indeed, the samples in this case, as shown by the record, were not even selected or taken from the importation by the United States consul, a Government official, but were produced at his office by a member of the exporting firm with a statement that

they were samples of the merchandise covered by the invoice then being consulated. There was no regard had as to the statutory requirements relating to the number of packages from which these samples should be taken. There was no determination by any appraising officer whether or not the samples had of the designated packages were sufficiently representative of the designated packages. Indeed, the general appraiser returned the contrary. * * * We do not think it can in any sense be held a compliance with the law that *the collector* shall select a certain number of samples of the importation and designate these for examination while in the customs custody. The law admits of no substitute processes *other than it provides;* but, as we have held, is mandatory in its provisions.

The court did not hold that an appraising officer had no jurisdiction to appraise *any* of the merchandise of an invoice unless he had examined the public store packages, nor that samples, a part of the importation, can not, when duly authenticated, be accepted by appraising officers for jurisdictional purposes.

The court said:

The law admits of no substitute processes *other than it provides.*

A glance at the statutes, decisions, and regulations will reveal that the law does provide other substitute processes. What was held was that the one adopted in the Tilge case was not one of these.

We held in effect that section 2901 of the Revised Statutes is mandatory and not directory, and in so holding we considered the case in line with decisions of other courts where similar questions have arisen. That section prescribes in part the procedure of all officers performing appraisement functions. That all appraisers, and those performing such duties, local and general, acting singly or by boards, are officers constituted under and whose powers and procedure are created, limited and defined by statute is undeniable. Dooley *v.* United States (182 U. S., 222), Schillinger *v.* United States (155 U. S., 163, 166), Anglo-Californian Bank *v.* United States (175 U. S., 37), Anglo-Californian Bank *v.* Secretary of Treasury (166 U. S., 722), Aufmordt *v.* Hedden (137 U. S., 310, 324), Nichols *v.* United States (7 Wall., 122, 126), D. M. Ferry & Co. *v.* United States (85 Fed. Rep., 550), Boswell *v.* United States (9 How., 336), Thatcher *v.* Powell (6 Wheaton, 119), Sheby *v.* Bacon (10 How., 56), Sheldon *v.* Sill (8 How., 441), Greely's Administrator *v.* Burgess (59 U. S., 18 How., 413, 416), Oelberman *v.* Merritt (123 U. S., 356), Stairs *v.* Peaslee (18 How., 521), Burgess *v.* Converse (2 Curt., C. C., 216), Origet *v.* Hedden (155 U. S., 238), Cheatham *v.* United States (92 U. S., 85), United States *v.* Beer (150 Fed. Rep., 566), United States *v.* Loeb (107 Fed. Rep., 692), *Ex parte* Clark (87 Cal., 640), *In re* Stevens (83 Cal., 322; 17 Am. St. Rep., 252), Furgeson *v.* Jones (17 Or., 204, 11 Apls. St., Rep., 814), Tyler *v.* Reynolds (53 Iowa, 146), Shearer *v.* Weaver (56 Iowa, 578), Keegan *v.* Geraghty (101 Ill., 26, 39), *In re* Moore (14 R. I., 38), Freeman *v.* Strong (6 Dana, 282, 32 Am. St. Dec., 70), Rachel *v.* Emerson (6 Mon. B., 280), Small *v.*

Small (2 Bush, 46), Mendall v. Rickets (6 Marsh, J. J., 592), Sanborn v. Bellows (22 N. H., 473), Carlton v. Washington Ins. Co. (35 N. H., 166), Smith v. Fowle (12 Wend., 9), Emburg v. Conner (3 N. Y., 511, 53 Am. St. Dec., 325), Gunn v. Howell (27 Ala., 675), Foster v. Glazener (27 Ala., 396), Barry v. Patterson (3 Humph., 314), Smith v. Rice (11 Mass., 506), Cook v. Darling (18 Pick., 393), Sears v. Terry (26 Conn., 285), Long v. Hewitt (44 Iowa, 365), Windsor v, McVeigh (93 U. S., 274), Edwards v. Bates County (117 Fed. Rep.. 529), Driggers v. Cassady (71 Ala., 533), Territory v. Delinquent Tax List (3 Ariz., 91), Gibney v. Crawford (51 Ark., 40), Dorrance v. Raynsford (67 Conn., 6, 52 Am. St. Rep., 266), Haywood v. Collins (60 Ill., 336), Coward v. Dillinger (56 Md., 61), Wight v. Warner (1 Dougl. [Mich.], 388), Platt v. Stewart (10 Mich., 265), Marks v. McElroy (67 Miss., 547), Freeman v. Thompson (53 Mo., 198), State, Baxton, prosecutor v. Jersey City (N. J. L., 192), Adams v. Jeffries (12 Ohio, 272, 40 Am. Dec., 477), Guilford v. Love (49 Tex., 743), McAllister v. Gugenheimer (91 Va., 320, 21 S. E., 475), Davis v. Point Pleasant (32 W. Va., 294, 9 S. E., 228), Stewart v. Milburn Gin & Mach. Co. (35 Fed. Rep., 230), Murray v. American Surety Co. (61 Fed. Rep., 276), Fidelity Ins. Trust & S. D. Co. v. Norfolk & W. R. R. (90 Fed. Rep., 177), Central Stock Yards Co. v. Louisville & N. R. R. Co. (112 Fed. Rep., 826), Postal Teleg. Cable Co. v. Southern R. Co. (122 Fed. Rep., 159), Birdseye v. Shaeffer (37 Fed. Rep., 824), Harland v. United Lines Teleg. Co. (6 L. R. A., 253, 40 Fed. Rep., 310), The Hungaria (41 Fed. Rep., 112), North German Lloyd S. S. Co. v. Hedden (43 Fed. Rep., 25), United States v. Southern Pac. R. Co. (49 Fed. Rep., 300), Re Cilley (58 Fed. Rep., 978), United States v. Mar Ying Yuen (123 Fed. Rep., 160), United States ex rel. Maxwell v. Barrett (135 Fed. Rep., 194), Iverson v. Saulsbury (68 Ga., 794), Chumasero v. Potts (2 Mont., 290), Bierbower v. Miller (30 Nebr., 177), State v. University (65 N. C., 715).

It is pointed out in the decisions in question that the two decisions of the Supreme Court of the United States, Erhardt v. Schroeder (155 U. S., 124), and United States v. Ranlett (172 U. S., 133), indicating the contrary, expressly excepted reappraisement proceedings such as were these cases where value and not classification was the real issue. So that these cases also may be classed with that well-established, long-continued uniform line of authorities, including the Supreme Court of the United States, almost if not every Circuit Court, and Circuit Court of Appeals, announcing and reaffirming the doctrine stated.

In the presence of this uniform array of authorities this court did not feel warranted in approving the decision of the board based upon the contrary doctrine. There is nothing, however, in the determination that Congress enacted this law to be observed and not to be

disregarded by those performing duties therein prescribed which in anywise changes the well-settled customs procedure of the country or any of the board rules or departmental regulations calculated to effect these purposes.

The orderly course of appraisement and reappraisement proceedings is as follows: Upon entry the collector designates, pursuant to section 2901 of the Revised Statutes, upon the invoice and other papers 1 package in 10 and at least 1 package in every invoice for examination in appraisement proceedings. These packages are forwarded to the public stores together with the invoice and other papers indicating the selected packages. Meanwhile the merchandise is generally released to the importer upon a general six months' bond conditioned that it will be delivered to the order of the collector at any time within 10 days after the packages sent to the public stores have been appraised and reported to the collector. This appraisal means, in case of appeal to a general appraiser or board of general appraisers, final appraisal. Upon arrival thereat they are opened, examined, and appraised by the local appraiser, and the number of yards, parcels, or quantities thereof ascertained under section 10 of the customs administrative act, and so reported to the collector under section 2899 of the Revised Statutes, section 13 of the customs administrative act, and Treasury regulations. The performance of this duty is, by section 13 of the customs administrative act, characterized the "decision of the appraiser." This duty upon his part, as commanded by section 2901 of the Revised Statutes and article 861 of the Customs Regulations of 1908, is as follows:

ART. 861. *Duties of appraiser.*—It is the duty of the appraiser, or officer acting as such, to make careful examination of any merchandise which the collector designates for that purpose, and to appraise the actual market value or wholesale price thereof at the time of exportation, in the principal markets, and in the currency of the country whence the same was imported; also to ascertain the quantities thereof, except of such goods as require weighing, gauging, or measuring by the surveyor. These facts will be indorsed upon the invoice, which shall be signed by the appraiser.

His return to the collector is regulated by article 863 of the same regulations, which in brief prescribes that:

ART. 863. * * * 1. Opposite each item or group of similar items upon the invoice the examiner will note in red ink his advisory classification of such item or items. * * * 2. When invoice prices are advanced to make market value there should be written or stamped in red ink over or opposite each item advanced the words "Appraiser advances to make market value," with the amount per unit of the advance. 3. At the foot of each invoice * * * should be placed also in red ink a summary * * * showing the marks and numbers of the cases examined, whether or not the unexamined packages have been classified by invoice description with those examined, any discrepancy between the invoice quantities and those actually found upon examination, and whether or not the invoice values are found to be correct. * * *

The decision of the appraiser, therefore, as returned to the collector, separately notes his findings and decision as to the dutiable value of each item and each instance wherein the goods are or are not "found correctly and fairly invoiced and put up," as required by law. Due notice thereof is, under article 897, Customs Regulations, immediately given the importer, who, if dissatisfied, must appeal to a general appraiser in a stated time.

It is elementary in all such cases of appeal that it is limited to the subject matter thereof, and as to all other matters not made the subject of appeal the decision from which appeal is taken becomes final and conclusive. If, therefore, the review sought by a single general appraiser is confined to the dutiable value of but part of the merchandise; or if the appeal relates to the dutiable value only of the whole of the merchandise, all other matters of ascertainment or appraisement required by the statute and made by the appraiser become final and conclusive, and the dutiable value alone of that part of the invoice, or the dutiable value of the whole of the invoice, as the case may be, or other matter expressly made the subject of appeal, constitutes and limits the inquiry by the general appraiser to those matters alone. On appeal from the decision of the general appraiser the same considerations obtain, the inquiry being confined and limited to the subject matter of the appeal and not to any other issue or merchandise covered by the invoices.

There is no jurisdiction vested in the general appraiser or Board of General Appraisers of the particular case save by that conferred by the particular appeal, hence no power to determine matters not covered by such appeal. This principle was announced by this court in Smith & Co. v. United States, No. 148 (T. D. 31527), and is provided by section 13, customs administrative act. See Worthington v. Beeman (91 Fed. Rep., 232), Sharp v. Fields (5 Lea [Tenn.], 326), Harris v. Harris (2 R. I., 538), Inman v. Henderson (29 Oreg., 116), Hall v. McCormick (31 Minn., 280), Gleiser v. McGregor (85 Iowa, 489), Luck v. Luck (83 Cal., 574).

The record upon appeal, therefore, gives notice to each, the general appraiser and in turn the Board of General Appraisers, of the scope and limits of the appeal to be heard *de novo* and the public-store packages legally designated for examination.

While the law dictates an examination, it is silent as to the character and extent of that examination; but inasmuch as the evident object of this examination is that the appraisers may be satisfied as to the dutiable value of the merchandise it is apparent that the extent, as well as the character of the examination, must be determined by the appraisers respectively according to the circumstances of each case.

The petition assuming a contrary rule to have been announced by this court alleges—

That a complete examination of the packages that happen to be picked out by the collector is not necessary in order to give jurisdiction in reappraisement cases (even where the reappraisal is held by a merchant appraiser and a general appraiser prior to the act of 1890).

That is true, and there is nothing in either of these decisions holding otherwise. On the contrary this court, in the case of Beer *v.* United States (1 Ct. Cust. Appls. 484; T. D. 31526), distinctly annunciated the same doctrine. In that case we held in effect, in line with the holding of Origet *v.* Hedden (155 U. S., 228, 239), that when jurisdictional requirements were satisfied, to wit, that the public-store cases in the one instance, or the packages the subject of appeal in the other instance, were before the general appraiser or Board of General Appraisers, their method of procedure was beyond the inquiry of this court. We held there that they could give some or no effect to the evidence or any part thereof, that they could adopt whatever formulas or calculations, or, forsooth, examination, as in their judgment conduced to a proper conclusion, and it is within the very essence of the expressions in that decision by this court that *what* examination, as distinguished from *an* examination, shall be made by the appraising officers of the samples or packages is something which they must determine for themselves, and when determined is final and conclusive. If the single general appraiser or Board of General Appraisers deemed an examination of the samples duly selected and preserved for that purpose a sufficient examination of the merchandise to meet the ends of justice, that is a matter for them to decide and not for this court to review.

The Treasury Department has promulgated regulations going to the selection of samples in reappraisement cases; the Board of General Appraisers has likewise adopted rules and regulations in conformity with the Treasury Regulations, necessitated by the dual authority of the department and the board, providing for the selection of samples or goods the subject of reappraisement, their retention, release, etc.

Article 896, Treasury Regulations, 1908, which was T. D. 10355, provides:

ART. 896. * * * When * * * an appeal to reappraisement is taken, the merchandise in customs control may be delivered to the importer upon his filing a stipulation that he will abide by the result of the reappraisement on samples, the same as if the merchandise was before the general appraiser, * * *. In all cases the assent of the Board of United States General Appraisers must first be obtained.

In the Loeb & Schoenfeld case we held of this practice and regulation "that now is and has been the case ever since the organization of the Board of General Appraisers."

Article 1543 of the Treasury Regulations, 1908, and rules XXIX and XXX of the Board of General Appraisers, amply provide for the selecting and retaining of samples for reappraisement purposes by the general appraiser and Board of General Appraisers, whereupon release orders may be given for the remainder of the merchandise, upon compliance with the legal requirements.

These regulations are calculated to reach the ends of justice in each case. If the general appraiser or Board of General Appraisers, respectively, sitting in the case deem these samples duly selected sufficiently representative of the merchandise before them for appraisement, they may proceed. We so held in the Beer case. If they do not deem them sufficient, whatever the reason, they have authority and power under section 2801, Revised Statutes, of ordering the whole or any part of the importation before them. Under section 2899 of the Revised Statutes it is made the duty of the importer to hold this merchandise, available for examination in a manner therein and in his bond prescribed, until 10 days after final appraisement or to compensate the Government under his bond for not so doing. When, therefore, by an appeal the general appraiser, and in turn the Board of General Appraisers, are given jurisdiction of an appraisement, the record advises them of the precise subject matter thereof, what packages are in public stores or otherwhere subject to their order and examination and any goods not therein the subject of appeal, and the goods therein not the subject of appeal, and therefore unnecessary of examination. From this record he and they can determine precisely if samples will suffice for examination, and if so, what samples, and what of the goods may on application be released, and each is fully empowered to consent thereto. If examination of these samples duly selected and preserved is by him and the Board of General Appraisers deemed sufficient, that concludes the matter. This procedure, however, in the Tilge case was not pursued, and that was plainly indicated by the decision of the court. There the samples were selected by the exporter abroad and delivered by the United States consul to the general appraiser. The court said:

The law admits of no substitute processes *other than it provides*.

This does not hold that samples may not be taken or examined and the remainder of the merchandise released, but it means exactly what the court said, that you can not substitute a process "other than the law provides." The law does, however, section 2901, provide substitute processes, in that it empowers the appraiser, general appraiser, or Board of General Appraisers to send for such merchandise as is liable to be inspected or appraised, and section 2899 and the regulations provide a manner whereby all other mer-

chandise may be released. Article 896, Customs Regulations, 1908, meets this situation by empowering the collector to do so upon approval of the general appraiser or Board of General Appraisers before whom the question is pending by virtue of an appeal duly made.

The statement in the petition "that samples *duly authenticated* may be substituted for the public-store cases in reappraisement hearings seems to have been the opinion of the courts in various cases," is precisely in line with the holding of this court in the Tilge case; but the samples must be "*duly* authenticated." They must be authenticated by being selected from the importation and approved by the appraising officer having jurisdiction of the case and delivered by the importer in this country, who is under bond to so deliver them whenever duly demanded.

The petition further contends that if section 2901, Revised Statutes, is held mandatory and jurisdictional, that waiver and consent can in no sense be substituted for any of the requirements. There was neither waiver nor consent asserted in these cases. Due and strict observance of the statutory requirements in the absence of waiver, stipulation, or consent was the only issue presented and the only matter decided. This court, however, assumed in its opinion the validity of T. D. 10355, which expressly provided for the due substitution of samples in the place of the public-store packages or the packages the subject of reappraisement. That doctrine has been expressly approved by the highest court. Converse *v.* Burgess (18 How., 413); Origet *v.* Hedden (155 U. S., 228).

The rule, however, that jurisdiction can not be waived, and that consent can not confer jurisdiction, is in its strictness confined to jurisdiction of the *subject matter* and the *parties*, sometimes not to the latter. The rule is not always the same where jurisdiction is a matter of *procedure* when the subject matter and parties are properly before the tribunal.

The courts have held that *procedure to acquire jurisdiction of the parties* may be waived by the appearance of the parties themselves. This is true even in tax sales and other procedure *in invitum*. The mandatory procedure to acquire jurisdiction of the person is waived by voluntary appearance. When a method of procedure is made jurisdictional by reason of being mandatory, there are innumerable decisions supporting the doctrine that such jurisdiction may be waived and the legal requirement stipulated.

The criterion between mandatory and directory statutes is that the former does and the latter does not conserve an advantage, right, or interest. It uniformly lies within the power of one or both parties at interest to waive or stipulate away an advantage, right,

or interest. If the parties can waive their entire rights by not appearing they can waive an incident to those rights after appearance. That seems axiomatic. The rule as stated by Brown upon Jurisdiction, sections 17 and 18, is as follows:

SEC. 17. * * * But there are some matters that are jurisdictional which may be waived. * * * and the rule may be laid down that if a party entitled to complain of the want of jurisdiction for any cause neglects to do so, and takes subsequent steps in a court having jurisdiction inconsistent with an intent to take advantage of the want of power below and permits a judgment on the merits to be rendered, he is bound thereby.

SEC. 18. * * * So also where some personal privilege belongs to the defendant in a case, or some matter that he must plead or raise by motion or demurrer in order to bring it before the court and show the want of jurisdiction, then the defendant waives it by not raising the question.

So in innumerable cases it has been held that where jurisdiction is conferred by statute upon courts of law, if a court of equity having jurisdiction of the subject matter proceeds by consent of the parties, procedure at law may be waived and jurisdiction in the court of equity be conferred by waiver or consent. Tyler v. Savage (143 U. S., 79); Burton v. Platter (53 Fed. Rep., 901); Kilborn v. Sunderland (130 U. S., 505); Lewis v. Lucket et al. (221 U. S., 554).

We make these remarks solely in reply to statement in the petition that it *necessarily* follows from section 2901 being held mandatory as to procedure that waiver, consent, or stipulation can not be substituted for any of its requirements. What would or would not constitute such in any particular case is and was not before the court and is not here decided.

The dilemma presented under the law of the goods passing entirely out of the customs custody within the time allowed for the collector to appeal (60 days) presents no novel situation. Prior to August 5, 1909, that time was only limited to what was "reasonable." That it was a situation constantly defeating reappraisement called by collectors at late days and not one presented by any decision of this court is within the knowledge of all familiar with customs practice and witnessed by the decisions of the Supreme Court more than 20 years since. See Beard v. Porter (124 U. S., 437).

That presents a matter of legislation which this court did not create and can not remedy, and we assume from its long existence one which the Congress has never deemed of sufficient moment for correction save as it might be affected by the limitation placed upon the time within which the collector may appeal by the act of 1909.

The court is of the opinion it did not err; that no modification of the opinion is warranted; and that the opinion makes no modification of the long-established practice and regulations in the customs matter

Petition *denied.*