OELRICHS & Co. *v.* UNITED STATES (No. 57).[1]

1. JURISDICTION.

The importer himself having invoked a decision by the General Appraiser and later by the reappraisement board, bringing both the subject matter and the parties there; can not be heard to contend the board was without jurisdiction to reappraise the goods.

2. MANDATORY PROVISIONS OF SECTIONS 2901 AND 2939, REVISED STATUTES.

Though there may have been a failure on the part of the collector strictly to comply with the provisions of sections 2901 and 2939, Revised Statutes, governing the special designation of merchandise for examination and appraisement, nevertheless the Board of General Appraisers would be in duty bound, the goods in question remaining subject to their control and open to their inspection and examination, to resort, on appeal, to the best means at hand for making an appraisement; and though it should appear that one package in ten was not in some instances examined by the board, there being sufficient samples of the merchandise before them and these having been examined, there would be accordingly such a substitute process as the law contemplates and permits.

---

[1] Reported in T. D. 32091 (21 Treas. Dec., 703).

3. QUESTIONS OF FACT NOT RETRIED BY CLASSIFICATION BOARD.

It is not the province of a classification board to retry questions of fact determined by a board of reappraisement, and additional testimony offered before the classification board was properly excluded.—Gulbenkian & Co. v. United States (153 Fed. Rep., 858) distinguished.

4. EVIDENCE NOT FORMALLY OFFERED AND NOT OBJECTED TO.

The Government having tendered evidence, with the promise to support it with additional testimony to make it relevant, but failing in this, and there being no motion to exclude it, the action of the board in taking the testimony originally can not be urged to vitiate the board's finding in the case.

## United States Court of Customs Appeals, December 6, 1911.

TRANSFERRED from United States Circuit Court for Southern District of New York, Abstract 19797 (T. D. 29306).

[Affirmed.]

*Comstock & Washburn* for appellants.

*Wm. L. Wemple*, Assistant Attorney General, and *Wm. K. Payne*, Deputy Assistant Attorney General, for the United States.

Before MONTGOMERY, SMITH, BARBER, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

This case has been transferred from the Circuit Court for the Southern District of New York. It is an appeal from a decision of Board 3 of General Appraisers overruling a protest which attacked the validity of an appraisement and reappraisement of certain wool imported from Russia. The wool in question was known as "Georgian autumns." It consisted of lamb's wool, white sheep's wool, and colored sheep's wool, separately packed and sorted and invoiced at separate values. The white wool was advanced in value by the appraiser to over 12 cents per pound, thereby increasing the duty from 4 to 7 cents per pound. This advance in value was sustained on reappraisement by General Appraiser Lunt, and on appeal to Board 2 to re-reappraisement the action of General Appraiser Lunt was sustained. This proceeding followed.

On such an appeal the questions presented are narrow, as has been frequently adjudicated. All that is open for review is the question of whether the board acted within its jurisdiction. If it did, its decision is final and conclusive, and all other tribunals are bound to respect it.

It is claimed that this reappraisement is invalid for the reason that the provisions of sections 2901 and 2939, Revised Statutes, requiring the collector to designate at least one package of every invoice and 1 package in 10 of merchandise imported, and a greater number if it should be deemed necessary, to be opened, examined, and appraised, was not complied with by the local appraiser, and that there were not before Board 2 the originals or samples of this number of bales which had been designated and sent to the public stores for examination.

The meritorious question presented is whether upon the failure of the collector to comply strictly with the provisions of sections 2901 and 2939, and on appeal for reappraisement to the Board of General Appraisers, such board is bound to set aside the appraisement and permit the entry of the goods at invoice value, or whether such board still has the duty of making an appraisement, resorting to the best means at hand, so long as the goods are subject to their control and open to inspection and examination.

This question had some consideration in the case of Tilge *v.* United States (T. D. 31676). In that case it was said:

Under section 2899 of the Revised Statutes it is made the duty of the importer to hold this merchandise, available for examination in a manner therein and in his bond prescribed, until 10 days after final appraisement, or to compensate the Government under his bond for not so doing. When, therefore, by an appeal the General Appraiser, and in turn the Board of General Appraisers, are given jurisdiction of an appraisement, the record advises them of the precise subject matter thereof, what packages are in public stores or otherwhere subject to their order and examination and any goods not therein the subject of appeal, and the goods therein not the subject of an appeal and therefore unnecessary of examination. From this record he or they can determine precisely if samples will suffice for examination, and if so, what samples, and what of the goods may on application be released, and each is fully empowered to consent thereto. If examination of these samples duly selected and preserved is by him and the Board of General Appraisers deemed sufficient, that concludes the matter.

It was further said in the opinion:

The statement in the petition "that samples duly authenticated may be substituted for the public-store cases in reappraisement hearings seems to have been the opinion of the courts in various cases," is precisely in line with the holding of this court in the Tilge case; but the samples must be "duly authenticated." They must be authenticated by being selected from the importation and approved by the appraising officer having jurisdiction of the case and delivered by the importer in this country, who is under bond to so deliver them whenever duly demanded.

Some confusion may arise from the statement that the examination of 1 package in 10 contemplated by section 2901 is jurisdictional. It is undoubtedly true that these provisions are mandatory and for the benefit of the importer as well as of the Government. But does it follow that the failure to observe this mandatory provision shall for all time result in perpetuating an injustice to the Government and prevent an advance from the invoice value where the remedy of the importer which he seeks is an appeal to a general appraiser or to a board of reappraisement, thereby invoking the jurisdiction of an officer or body authorized by law to make reappraisement of importations? It would seem on principle that the importer, having thus invoked the jurisdiction of the general appraiser and later the reappraisement board, ought not to be heard to say that the board could not perform that function. It is not meant to say that in a case where it transpires after an appeal for reappraisement that there is no method by which the board can make a reappraisement based

upon examination of the goods in public stores or any substitute process which would be its equivalent, the importer may not raise this question. But where, as in the present case, the board had the opportunity to and did inform itself by an examination of the goods the subject of the appeal or of selecting samples thereof if they chose from the body of the importation, it would seem that no injustice is done in permitting the board to act upon the information thus obtained.

It is said that the board never acquired jurisdiction of the subject matter in this instance. We do not agree with this contention, and we think counsel for the importer mistakes the holding of the court in Tilge v. United States (2 Ct. Cust. Appls., 149; T. D. 31676). The subject matter of this appeal is the reappraisement of the goods covered by this appeal. There can be no doubt that under the law and upon the importer's own appeal Board 2 acquired jurisdiction of this subject matter. It would not do for the importer to say that it did not at the same time acquire jurisdiction of the parties, for the importer was himself the party that invoked the jurisdiction. Having jurisdiction of the subject matter and of the parties, that jurisdiction may be lost if the board proceeds upon a wrong principle in reaching its conclusion. Such is not, however, this case. It is true that it does not appear that 1 package in 10 was examined by the board in some instances. But it does appear that the board had the opportunity to examine such samples as they saw fit to draw—in fact, drew such samples—from the importation, and, finally, it appears by the testimony of General Appraiser Howell that after taking the evidence in the reappraisement case General Appraiser Howell, in company with the importer and his attorney, drew additional samples, to which no objection was taken. The classification board found as a fact that the evidence clearly shows that the board had before it ample and sufficient samples of all the merchandise under reappraisement. We think, in view of this finding, that the substitute procedure which the law admits, as intimated in Tilge v. United States (2 Ct. Cust. Appls., 149; T. D. 31676), was followed, and that there was no want of jurisdiction. If there was an error on the part of the local appraisers by failure to examine 1 in 10 of the packages, we agree that the rule laid down in Burgess v. Converse (4 Fed. Cas., 726), that if the importer demands a reappraisement, and that reappraisement is regular, he waives all objections to the action of the local appraiser. See also Beer v. United States (1 Ct. Cust. Appls., 484; T. D. 31526).

It is next claimed that the reappraisement board proceeded upon the wrong principle and contrary to the law in not following and regarding the case of Gulbenkian & Co. v. United States (153 Fed. Rep., 858) as controlling. It was sought to show before the classification board that it has been the uniform custom in the principal

markets of the country whence the goods were imported to buy and sell goods like these in question, colored and whites mixed, at one and the same price, and it was claimed that under these conditions the customs officials, including the three general appraisers, erred and acted unlawfully in appraising the wool separately. It is claimed that the Georgian autumns, colored and whites mixed, should have been inventoried at one and the same price. This testimony was excluded by the classification board, and properly so. It is not the province of the classification board to retry the question of fact determined by the board of reappraisement. This was held by this court in Wolff *v.* United States (1 Ct. Cust. Appls., 181; T. D. 31217) and reaffirmed in Briggs *v.* United States (1 Ct. Cust. Appls., 408; T. D. 31482). That this testimony was an effort to retry that question is obvious. But more than this, the goods were separately invoiced, and there was sufficient before Board 2 to indicate that they were purchased at separate prices. The real contest appears to have been whether the goods were properly graded by the invoice.

The importer himself did not pursue the course indicated in the Gulbenkian case, *supra.* In that case the wools were all invoiced at the same price, and evidence was introduced before the classification board showing conclusively that, according to the uniform custom, the wools were sold at a single price in the country of production. That fact is not established in the present case.

It should be stated that the testimony offered in the Gulbenkian case, *supra*, appears not to have been supplemental testimony, simply making weight for the importer, but the only testimony bearing upon the question of the custom in selling wools in the country of exportation, which was shown by the conclusive testimony to be the method claimed by the importer, as it would appear from the opinion of Judge Coxe that the record was destitute of any evidence that the wool was bought and sold in the country of exportation in any other way than as claimed by the importer.

In the present case there was abundant testimony before Board 2 tending to show that the goods were sold as claimed by the Government.

Before the reappraisement board affidavits of three Marseille merchants were offered to the effect that certain samples of wool submitted to them were of the B O and B O O character; that is, of a grade higher than that fixed by the importer in his invoice. Complaint is now made that this testimony was improperly admitted by the board of reappraisement. When these affidavits were offered, they were accompanied by the statement:

The first I offer as an exhibit is the Government's Exhibit 1, sample of wool said to be representative B wool from all of the invoices on hearing, subject to objection of course. Of course, if it proves that it is not a proper subject I offer it for what it is worth.

Importer's counsel then said:

I presume it will be a matter of proof afterwards?

To which counsel for the Government replied:

Oh, yes; I have got to establish that. Also I have to establish that that is a fair sample. I expect to do that.

Later Mr. Wakefield, attorney for the Government, testified:

I further testify that the sample of wool sent to Marseille was received by me from Mr. Seavers and delivered to Special Agent Clayton to be transported to Marseille, and that I received the sample by mail from the department on its return, and that during the time it was in my hands it underwent no change whatsoever.

By Mr. WASHBURN. You know that Special Agent Clayton is in the city, don't you?—A. He called me up on the phone yesterday. I tried to get him here. He delivered the sample to the special agent in Paris.

Mr. WAKEFIELD. If there is any objection to the validity of that sample, or that it was not properly connected, I don't think it possible to connect it by competent legal evidence, and I would request the board to forward a representative sample of the B wool to Marseille directed to these brokers, with the request for a statement. That is the only way we can get competent strict evidence.

Mr. WASHBURN. I object to that. I shall decline to admit that it has been shown that Exhibit 7 is a competent sample.

It was contended before the classification board that the admission of these affidavits was error sufficient to oust the appraisement board of jurisdiction. Assuming that this is all that appeared in the case, it is not to be assumed that the board considered these affidavits as establishing any fact made the subject of controversy, particularly as it was conceded by the Government's attorney that he had not made proof showing that the samples attached were like the samples of wool actually adopted. The samples were returned with the affidavits, and were before the board, and it is not impossible that they by examination could determine that these samples corresponded with the samples of wool which they had determined was the character of the importation. It is not claimed by the Government that the samples were shown by the evidence to be correct samples, but it is claimed that by comparison with the other samples of wool which the board has before them they may have been able to determine that such was its quality.

There was no motion to strike out this evidence for the very adequate reason that the attorney for the Government did not *claim* that he had established sufficiently the fact that the sample was taken from the goods. It would be an anomaly to hold that testimony having been received before the board of appraisement without objection, no motion having subsequently been made to strike it out, the action of the board in receiving this testimony could on review be held error and the entire proceeding vitiated because of such action, when the attention of the board had not been challenged to any such view of the case on the reappraisement proceeding. This testimony was, so far as the objection now urged by counsel goes, competent for the purpose of showing that wool of the character

shown by the samples attached to the affidavits was B O or B O O wool. If there was any error it was in failing to supplement the proof by showing that the samples attached to the affidavits corresponded with the wool in question in this importation, and, as indicated above, a comparison of the wool shown to be the subject of importation with the samples would enable the board to form some judgment upon that question.

The question of whether they gave improper weight to any of the evidence before them is not the subject of review by the board of classification or this court. Wolff *v.* United States (1 Ct. Cust. Appls., 181; T. D. 31217); Beer *v.* United States (1 Ct. Cust. Appls., 484; T. D. 31526).

We do not discuss the rulings upon evidence offered for the purpose of showing that this proceeding was an open hearing, as we have treated it in our discussion as an open hearing.

We find no error in the ruling of the classification board, and their decision is *affirmed.*

DE VRIES, Judge, did not sit in this case.