UNITED STATES *v.* JACOB P. STEFFAN & SONS (No. 3384)[1]

[1] T. D. 44702.

United States Court of Customs and Patent Appeals, March 2, 1931

*Charles D. Lawrence*, Assistant Attorney General (*Marcus Higginbotham, jr.*, special attorney, of counsel), for the United States.

*Barnes, McKenna & Halstead* (*Samuel M. Richardson* and *Joseph Schwartz* of counsel) for appellee.

[Oral argument February 3, 1931, by Mr. Lawrence and Mr. Schwartz]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court sustaining appellee's protest upon the ground that the appraisement and reappraisement of the merchandise involved were void.

The importation was made under the Tariff Act of 1913 and consisted of men's and women's rubber heels and "Neolin" soles in various colors. They were contained in 307 cases or cartons and four boxes and were entered at the port of Buffalo, N. Y., on March 13, 1922.

The appraised value was higher than the entered value. Upon appeal to reappraisement the general appraiser affirmed the appraised value. The entry was thereafter liquidated upon the basis of the reappraised value.

Appellee thereafter filed a protest against the liquidation, alleging as ground therefor—

\* \* \* that the appraisement and reappraisement of the said merchandise was illegal and void because the collector did not designate 10 per centum of the packages for examination, and the appraiser did not examine 10 per centum of said packages or retain samples thereof, and no samples were before the appraiser or the Board of General Appraisers in reappraisement of said merchandise.

We think it is established by the record that the collector designated for examination at the appraiser's stores only eight packages and not one of every ten of the packages of merchandise, as the law required; that of the eight packages so designated four were cartons marked "I. T. S.," three were cartons marked "Goodyear Wingfoot," and one was a case marked "Soles Blk. & Tan." In the Summary of Entered Value, Examination and Appraisement is found the following notation signed by the appraiser: "7 cartons 1 case exam. Bal. classified."

It appears that there were 100 cartons of "Men I.T.S. Heels" and 160 cartons of "Wos. I. T. S. Heels." The men's heels were invoiced at $24 per gross and the women's heels at $21 per gross. The men's and women's heels above referred to were not separately appraised

by the appraiser or the general appraiser. There were four cases of Neolin soles, each containing 239 pairs, of which 251 pairs were "Choc. soles," 200 pairs were "Blk. soles" and 505 pairs were "Soles Blk. & Tan." One case containing "Blk. & Tan" soles was designated by the collector and was examined by the appraiser. No separate appraisement, however, was made of the "Blk. & Tan" soles, but their value was included in the aggregate appraised value of the soles shown on the invoice. There were 38 cartons of "Mens Half Heels Blk. & Tan," each containing 12 dozen, and nine cartons of "Wos. Half Heels Tan," each containing 12 dozen. Each of said 38 cartons of men's heels and 9 cartons of women's heels was marked "Goodyear Wingfoot." Said men's half heels were all invoiced at the same price, and the women's heels were all invoiced at the same price, but at a lower price than the men's heels. There is nothing in the record to show whether the four cartons selected for examination contained both men's and women's half heels, and no separate appraisement was made of the men's half heels and of the women's half heels, but their value was included in the aggregate appraised value of all of the half heels marked "Goodyear Wingfoot."

In the testimony taken before the general appraisers upon the appeal to reappraisement there is no mention of the samples of the merchandise involved.

The question before us is whether the original appraisement of the merchandise was illegal and void because the collector did not designate one of every ten of the packages for examination, as required by the provisions of section 2901, Revised Statutes, in force at the time of the importation of said merchandise, and because the appraiser did not examine one of every ten of said packages or retain samples thereof, and whether the reappraisement was void because the samples required by law to be retained were not before the Board of General Appraisers in reappraisement of said merchandise.

This court has recently had occasion to examine the question of the proper construction of the provisions of law applicable here, in the case of *Carey & Skinner* v. *United States*, 16 Ct. Cust. Appls. 382, T. D. 43118. In that case a large number of decisions in this and other courts were reviewed, including the cases decided by the United States Supreme Court and relied upon by the Government here. The court, after reviewing such decisions, said:

From these authorities, it is apparent that the mandatory duty is imposed upon the collector to designate one package in ten, or more, of the imported goods for examination, and that one of the objects of such designation is that there may be available samples for the inspection and examination of succeeding appraising and reviewing tribunals.

The court then stated that there are exceptional cases where such designation can not be or ought not to be made, such as changing or perishable goods, heavy machinery, and bulky articles.

The merchandise here involved does not come within any exceptions of the character there referred to by the court, and there is no reason why one package out of every ten should not have been designated by the collector for examination. To hold otherwise would be equivalent to holding that the law making such requirement was not mandatory in any case.

It appearing from the record that only eight packages out of the 311 were designated and retained for examination, and that the appraiser examined only eight packages out of the 311, his appraisement was null and void.

The next question is: The importer having appealed to reappraisement, is the reappraisement made by the general appraiser also void?

It is clear from the record that no samples were produced before him. This the Government admits, but it contends that there is no proof that the samples were not reasonably accessible for inspection, as the trial was held at Buffalo where the importation was made.

The pertinent part of paragraph "M" of Section III of the Tariff Act of 1913 reads as follows:

M. That the appraiser shall revise and correct the reports of the assistant appraisers as he may judge proper, and the appraiser, or, at ports where there is no appraiser, the person acting as such, shall report to the collector his decision as to the value of the merchandise appraised. * * * In such cases the general appraisers and the Board of General Appraisers shall give reasonable notice to the importer and the proper representative of the Government of the time and place of each and every hearing at which the parties or their attorneys shall have opportunity to introduce evidence and to hear and cross-examine the witnesses for the other party, and to inspect all samples and all documentary evidence or other papers offered. * * * and *no reappraisement or re-reappraisement shall be considered invalid because of the absence of the merchandise or samples thereof before the officer or officers making the same, where no party in interest had demanded the inspection of such merchandise or samples, and where the merchandise or samples were reasonably accessible for inspection.* [Italics ours.]

Assuming it to be true that the packages designated by the collector and examined by the appraiser were reasonably accessible for inspection at the reappraisement trial at Buffalo, there would still exist the same difficulty that rendered the appraisement by the local appraiser void, to wit, absence of the merchandise or samples required by the law. Therefore, if the merchandise contained in the eight packages had been reasonably accessible for inspection, the law would not have been complied with to save the reappraisement from invalidity. The record showing that only eight packages were retained and only eight packages examined by the appraiser, we can not assume that the merchandise or samples thereof were reasonably accessible for inspection.

The Government contends that even if the original appraisement was void, the reappraisement was valid because there was a substi-

tuted procedure before the general appraiser which was approved by this court in the case of *Oelrichs & Co.* v. *United States,* 2 Ct. Cust. Appls. 355, T. D. 32091. In that case, as here, the collector failed to designate one out of ten packages of an importation for examination and an appraisement was made upon examination of a less number of samples. There, as here, the importer appealed to reappraisement, but, unlike the case at bar, the general appraiser there had opportunity for complete examination of the goods. The court in its opinion said:

\* \* \* It would seem on principle that the importer, having thus invoked the jurisdiction of the general appraiser and later the reappraisement board, ought not to be heard to say that the board could not perform that function. It is not meant to say that in a case where it transpires after an appeal for reappraisement that there is no method by which the board can make a reappraisement based upon examination of the goods in public stores or any substitute process which would be its equivalent, the importer may not raise this question. But where, as in the present case, the board had the opportunity to and did inform itself by an examination of the goods the subject of the appeal or of selecting samples thereof if they chose from the body of the importation, it would seem that no injustice is done in permitting the board to act upon the information thus obtained.

In the case at bar the general appraiser had no such opportunity. He could only have examined eight samples taken from 311 packages.

Assuming, without deciding, that samples could have been taken from goods released for consumption, and that in such event, if reasonably accessible, the reappraisement herein would have been valid, we can not assume that such samples were reasonably accessible under the facts of this case.

In the case of *United States* v. *Rolls-Royce of America (Inc.),* 13 Ct. Cust. Appls. 259, T. D. 41202, this court said:

Even if it might be held, and as to this we express no opinion, that samples might be taken from goods in consumption, it will readily appear that great difficulty would be had in rendering them admissible as such; they would not be competent, if objected to, unless identified as a part of the shipment in question and as being in the same condition as when imported. Such samples, taken from the commerce of the country, might be accessible, but hardly can be said to be *reasonably* so. \* \* \* [Italics quoted.]

We are clear that, for the reasons stated, the decision in the case of *Oelrichs* v. *United States, supra,* is not applicable to the case at bar, and that the reappraisement, as well as the original appraisement, was void. *McKesson & Robbins* v. *United States,* 11 Ct. Cust. Appls. 459, T. D. 39534.

Upon oral argument the assistant attorney general argued that even though the appraisement and reappraisement be void as to certain of the merchandise not actually examined, they were valid as to the packages which were examined and as to all merchandise of like

character in other packages. In support of such contention he cites the decision of this court in the case of *McKesson & Robbins* v. *United States, supra.*

It is sufficient to say that the invoice in the case at bar shows seven different kinds of merchandise, and the record does not show sufficient identification of the various kinds of merchandise and separate appraisement of the different kinds to warrant upholding any part of the appraisement or reappraisement.

The judgment of the United States Customs Court is *affirmed.*