## TILGE *v.* UNITED STATES (No. 274).[1]

1. REAPPRAISEMENT ACCORDING TO SO-CALLED CONSULAR SAMPLES.

Where the goods in controversy had gone into commerce and had been there consumed, in reappraisement proceedings, on a failure to produce the samples of these goods selected and deposited at the public stores, it is not permissible for the Government to substitute consular samples forwarded according to a practice of the Treasury Department from the place of export abroad.

2. SAMPLES ON REAPPRAISEMENT.

That samples selected by the collector at the port of entry and deposited at the public stores should be examined on a reappraisement is a mandatory requirement of the law.—Loeb & Schoenfeld *v.* United States (1 Ct. Cust. Appeals, 385), (T. D. 31479).

### United States Court of Customs Appeals, April 10, 1911.

APPEAL from a decision of the Board of United States General Appraisers, Abstract 23354 (T. D. 30645).

[Reversed.]

*Curie, Smith & Maxwell* (*W. Wickham Smith* of counsel) for appellants.

*D. Frank Lloyd*, Assistant Attorney General (*Martin T. Baldwin* on the brief), for the United States.

Before MONTGOMERY, HUNT, SMITH, BARBER, and DE VRIES, Judges.

DE VRIES, Judge, delivered the opinion of the court:

This case involves the validity of a reappraisement proceeding held by a general appraiser. The case was argued before this court and submitted with the case of Loeb & Schoenfeld, *supra* 385, previously decided. In that case we reviewed the law applicable to both cases, and there will therefore be no necessity for a consideration of the legal principles here involved. The underlying facts of the two cases, however, are so different as to require a different conclusion in this case upon the facts, and hence a separate consideration.

This case arose out of the importation of silk hatbands at the port of Philadelphia. The importation consisted of eight cases of that merchandise, all of which were duly entered for consumption, appraised, and in due course released from customs' custody and went out of the possession of the importer into consumption.

Entry, appraisement, and all proceedings were so had that the entry was liquidated on the 28th of November, 1906. On the 22d of December following the collector called for a reappraisement. When reappraisement was decided upon the collector called upon the importer for the goods or samples thereof, to which the importers replied that

---

[1] Reported in T. D. 31507 (20 Treas. Dec., 754).

they had no samples, as the goods had gone into consumption. The reappraisement thereupon proceeded upon certain so-called "consular samples" furnished by the United States consul at Barmen, Germany, from which place the goods were exported.

It seems to have been the established practice of the consul at that point to take samples of such goods, which samples were before him at the time of the consulation of the invoice, and forward them to the ort of proposed entry of the merchandise. It appears from the record, unchallenged, that in this case that practice was followed. The goods from which the samples were taken by the consul at Barmen were produced by one of the members of the exporting firm, who then stated that they were samples of the merchandise to be exported which was covered by the invoice produced. Thereupon the consul cut from the samples produced the "consular samples," so called, and forwarded them, properly identified, to the appraiser at the port of Philadelphia, who received them prior to the arrival of the merchandise.

At the hearing on the reappraisement it was testified that the goods had gone into consumption, and thereupon the general appraiser proceeded to reappraise the goods upon these so-called "consular samples." It appears that the general appraiser did not reappraise, nor did he have samples before him of, all lines of the goods; and that in such cases he declined jurisdiction for lack of samples. It thus appears that the samples furnished by the consul were not complete samples of all the merchandise.

The appellant, who was the protestant, maintains that an appraisement on such samples is not, and that this was not, a compliance with the statute. As we have already held, in the Loeb & Schoenfeld case, section 2901 of the Revised Statutes requires that the *collector shall select* at least one package of every invoice, and at least one of every ten packages of the importation for the purposes of examination in appraisement proceedings. We held in that case that these packages must be examined by the appraiser and board of general appraisers in order that a valid appraisement may obtain. The proceedings in this case, therefore, were an attempt to substitute, in the place of the samples designated by the law to be selected by the collecter of a certain number and quantity in each invoice, samples designated by a United States consul abroad without reference to quantity or number of the packages covered by the invoice, and by him forwarded through the appraiser to the general appraiser holding the reappraisement. Indeed, the samples in this case, as shown by the record, were not even selected or taken from the importation by the United States consul, a Government official, but were produced at his office by a member of the exporting firm with a statement that they were samples of the merchandise covered by the invoice then being consulated. There was no regard had as to the statutory requirements relating to the number of

packages from which these samples should be taken. There was no determination, by any appraising officer whether, or not, the samples had of the designated packages were sufficiently representative of the designated packages. Indeed, the general appraiser returned the contrary. They were not selected by a person acting in the course of official duties under the constraint of official oath, but by an interested party, the exporter himself, acting not under oath as to these matters and at a place where he was beyond the jurisdiction or .the processes of this country in case false oath were made, in such .quantities and of such lines as he chose and by him submitted to the consul.

While this practice is a commendable one in the interests of a correct administration of the customs laws, in that it affords the appraising officers a check by which they can compare the consular samples with the regularly selected and designated samples in the appraisement of merchandise, we do not think it can in any sense be held a compliance with the law, that *the collector* shall select a certain number of samples of the importation and designate these for examination while in the customs' custody. The law admits of no substitute processes other than it provides; but, as we have held, is mandatory in its provisions.

It has been held by this court and by the Circuit Court of Appeals for the Second Circuit that where the law has prescribed that the dutiable value of merchandise shall be determined upon packages and samples selected in a certain way and by certain officials, that samples selected by other officials or parties can not be substituted therefor. American Sugar Refining Co. *v.* United States, *supra*, p. 228 (T. D. 31273); United States *v.* Lueder (154 Fed. Rep., 1).

The records show that in specific cases various witnesses and officials have endeavored to point out the lack of the necessity for the examination of samples or resort to the samples selected by the proper customs officials, and designated as prescribed by statute, acting under their official oaths in accordance with the command of Congress and the regulations of the department. In exceptional cases, undoubtedly, it may appear that justice may be had by a substituted procedure, but we think that the interests of all, until the prescribed procedure is duly changed, better subserved by a uniform observance of the methods prescribed by Congress and the regulations of the department, which epitomize the legislative wisdom and the experiences of customs officials and the Treasury Department in the collection of the customs revenues of the Government for over a hundred years. Any other course would be legislation.

This procedure, as thus prescribed, would seem to be sufficient. It is so calculated that ample opportunity is afforded, and .ample time had, or may be had, upon the arrival of a cargo of imported merchandise, for the determination of not only the dutiable value of the merchandise but of all matters affecting the revenues. It is provided that

in no case can any part of such merchandise be taken from the customs custody until appraisement, reappraisement, and re-reappraisement.is had, except by consent of the customs officials. There is no limit upon the time within which these duties shall be completed by the appraising officers or those acting as such.

The importing merchant has the right to assume, upon his merchandise being delivered to him out of the customs custody, and sufficient action for all revenue purposes has been had and that it is no longer incumbent upon him to withhold his merchandise or any part thereof from the body commerce of the country in the interests of the Government's revenues.

We think that the Congress having prescribed that samples for examination in reappraisement cases shall be taken in certain numbers or quantities by certain officials, there can be no legal substitute therefor, except by legislation, which this court is not empowered to enact. The production before the appraisers of other samples, however much they may, and probably do, add to the correctness of their conclusions by way of comparison or otherwise, are nevertheless insufficient as a substitute for jurisdictional purposes.

*Reversed.*

MONTGOMERY, Presiding Judge, and HUNT, SMITH, and BARBER, Judges, concur.