UNITED STATES *v.* SCANLAN (No. 1309).[1]

REAPPRAISEMENT IN THE ABSENCE OF SAMPLES.

The protest itself shows that the reappraisement by the single general appraiser was made without a sample of the importation or the merchandise before him and there was no waiver of production of samples. The appraisement by the single general appraiser was accordingly invalid and the appraisement of the local appraiser became again operative.

## United States Court of Customs Appeals, May 18, 1914.

APPEAL from Board of United States General Appraisers, Abstract 33982 (T. D. 33833).

[Reversed.]

*William L. Wemple,* Assistant Attorney General (*William A. Robertson,* special attorney, of counsel), for the United States.

Submitted on record by appellee.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

The merchandise involved in this case consists of 583 head of cattle which were imported from Mexico at the port of Brownsville, Tex., under the tariff law of 1909.

The importer invoiced and entered the cattle at a valuation of $28 per head, Mexican money. Upon appraisement by the local appraiser this valuation was raised to $30 per head, same currency. The importer thereupon appealed for a reappraisement of the cattle by a single general appraiser. Notwithstanding this appeal, the collector forthwith liquidated the entry at the increased valuation and released the cattle to the importer upon the payment of the increased and additional duties.

Several months later a single general appraiser sat in such appeals at the port of entry and took cognizance of the case. After hearing the testimony of a number of expert witnesses the general appraiser sustained the entered value of the cattle.

The collector of the port appealed from this reappraisement to a re-reappraisement by a board of three general appraisers. This appeal was entertained by a reappraising board, but it came at once to the board's attention that the cattle in question had long since been disposed of and that no examination or inspection could be had of any of them, and because of this fact the board held that it had no authority to proceed with the reappraisement. It therefore dismissed the appeal.

Thereupon the collector, acting under the department's instructions, held that the reappraisement made by the single general ap-

---

[1] Reported in T. D. 34473 (26 Treas. Dec., 854).

praiser was void because of the fact that it also was had without an examination of the cattle or of any samples thereof. The collector also held that the liquidation already made by him was invalid because of the fact that an appeal to reappraisement was pending at the time thereof. Therefore, on November 11, 1912, in accordance with the department's instructions, the collector reliquidated the entry upon the same basis as his first liquidation, except for a correction in the importer's favor relating to the computation of the additional duties and also a miscalculation in the reduction of the Mexican currency to United States currency. Afterwards, on November 25, a second reliquidation was made assessing similar additional duties upon two head of the imported cattle which had not been reported in the invoice or entry.

The importer filed his several protests against these assessments, claiming that the reappraisement made by the single general appraiser was valid and controlling in the premises. In the protests, however, the importer stated that the reappraisement by the single general appraiser "was rendered on the evidence submitted and without a sample of the importation or the merchandise before him."

The protests were submitted upon the record to the Board of General Appraisers and were sustained, from which decision the Government now appeals.

The following extract from the decision sets out the board's reasons therefor:

The papers forwarded by the collector clearly show that he disregarded the reappraisement upon instructions from a superior officer upon the ground that the reappraisement was invalid. The collector, in our judgment, can not in an arbitrary ex parte way set aside the solemn finding of a general appraiser. The contention of the collector evidently was, and his superior officer acted upon that contention, that the general appraiser who passed upon the value of the cattle in question did not have samples of the cattle before him. The report of the general appraiser, however, does not disclose the fact that he did not have samples before him, and apparently this is a gratuitous conclusion of the collector. The law presumes that every public official proceeds in the discharge of his duty in accordance with the law, and in the absence of evidence to the contrary his action is presumed to be valid. The report does disclose that the case was appealed to a board of general appraisers and that no samples were before the board and they refused to take action. The protests are therefore sustained and the collector directed to reliquidate the entries, assessing duty upon the value found by the general appraiser, whose decision under section 13, above quoted, is final and conclusive, the Board of General Appraisers refusing to act upon appeal for want of jurisdiction.

It thus appears that the board proceeded upon the theory that the reappraisement made by the single general appraiser would have been invalid if made in the absence of the merchandise or samples thereof, but that the law presumes that every public official proceeds in the discharge of his duty in accordance with the law, and therefore

it should be presumed in this case that the single general appraiser made the reappraisement upon an inspection of the merchandise or lawful samples thereof.

The court is able to agree with the first part of the view taken by the board, but not with the second. It is certainly the settled rule under the tariff act in question that the single general appraiser could not lawfully reappraise an importation upon such an appeal in the total absence of the merchandise and of samples thereof. This rule has been frequently set out in the decisions of this court, of which the following may be cited: Loeb v. United States (1 Ct. Cust. Appls., 385; T. D. 31479); Tilge v. United States (1 Ct. Cust. Appls., 462; T. D. 31507); Tilge v. United States (2 Ct. Cust. Appls., 149; T. D. 31676); Oelrichs v. United States (2 Ct. Cust. Appls., 355; T. D. 32091); Maddaus v. United States (3 Ct. Cust. Appls., 330; T. D. 32623).

But the court is unable to assume that the single general appraiser had the merchandise or samples thereof before him at the reappraisement in question, since the importer himself in the protests which underlie the present case affirmatively states the contrary to be true. In the protests the importer expressly avers that the reappraisement in question was made by the general appraiser upon evidence, but "without sample of the importation or the merchandise before him." This statement in the protests became part of the record and made it unnecessary for the Government to submit testimony in that behalf at the hearing before the classification board.

It may be noted that the present record does not disclose facts from which a waiver of samples at the reappraisement may be implied. Such a waiver was not claimed by the importer in his protests, nor was the decision of the board founded upon such a finding, and the action of the reappraising board in dismissing the Government's appeal negatives such an implication. It is clear that no such purpose was in the mind of any of the parties to the proceeding, nor was any one of them led in any manner by the other to believe that such a waiver was intended.

It therefore appears of record in the present case that the appraisement made by the single general appraiser upon appeal was invalid. In this contingency the appraisement theretofore made by the local appraiser necessarily became again operative, and the collector was required to adopt that valuation in making his assessment.

It is proper to observe that the real complaint of the importer in the present case relates to the impracticability of retaining the cattle or any of them for the inspection of the single general appraiser upon the appeal. In the statement of his claim in this behalf the

importer refers with approval to the following comments made by the collector in his report upon the case to the department:

Mr. Scanlan appears to base his protest on the fact that the collector did not retain samples at the time the importation was made. In this connection I beg to state that samples of this importation were not retained by the collector for the reason that this importation consisted of range cattle, and a sample thereof in a very short time would be of little or no use to represent the kind of cattle that were imported. For instance, the steers in this importation on the day they were imported would have weighed between 650 and 700 pounds each. Any of these steers that would have been retained by the collector, after having been fed and cared for, would naturally improve in condition and would therefore be of no use as a sample of the importation.

The importer therefore complains that the rule relating to the presence of samples at a reappraisement has been applied by the department in such a manner as virtually to deny him the remedy of an appeal to reappraisement, and this without fault on his part.

In answer to this complaint it should be observed that from an early day it was made the mandatory rule of customs law that a reappraising officer or board should inspect the merchandise in question or samples thereof upon reappraisement, and that a failure to do so, in the absence of waiver, would avoid the reappraisement thus made. It was known that the enforcement of this rule might in exceptional cases deprive either the Government or the importer of the remedy of reappraisement. Nevertheless, this policy was adopted rather than the opposite policy whereby either party might be exposed to the uncertainties attending a reappraisement upon expert testimony in the entire absence of the merchandise or samples thereof. A reappraisement in the absence of samples may indeed be had if both parties waive their production, but not without such a waiver. The following comments of this court in the case of Tilge *v.* United States (2 Ct. Cust. Appls., 149, 158; T. D. 31676) are in point:

The dilemma presented under the law of the goods passing entirely out of the customs custody within the time allowed for the collector to appeal (60 days) presents no novel situation. Prior to August 5, 1909, that time was only limited to what was "reasonable." That it was a situation constantly defeating reappraisement called by collectors at late days and not one presented by any decision of this court is within the knowledge of all familiar with customs practice and witnessed by the decisions of the Supreme Court more than 20 years since. See Beard *v.* Porter (124 U. S., 437).

That presents a matter of legislation which this court did not create and can not remedy, and we assume from its long existence one which the Congress has never deemed of sufficient moment for correction save as it might be affected by the limitation placed upon the time within which the collector may appeal by the act of 1909.

In accordance with the views above expressed, the decision of the board is *reversed.*