CAREY & SKINNER *v.* UNITED STATES (No. 3058) [1]

United States Court of Customs Appeals, November 30, 1928

*Barnes, McKenna & Halstead (Albert McC. Barnes, jr.,* of counsel) for appellants. *Charles D. Lawrence,* Assistant Attorney General *(John F. Kavanagh* and *Philip Stein,* special attorneys, of counsel), for the United States.

[Oral argument October 11, 1928, by Mr. Barnes and Mr. Stein]

Before GRAHAM, Presiding Judge, and BLAND and HATFIELD, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

The appellee made 51 entries of smoked meats at the port of Buffalo under the emergency tariff act of May 27, 1921. After these

---

[1] T. D. 43118.

various entries were received by the collector, he noted upon each of them, through his deputy, that the imported goods named therein were to be examined by the appraiser at "Greene Street," which it appears was the American Railway Express Co. terminal. All the goods were then examined by the appraiser at such terminal, his appraisement was returned to the collector, and the goods were released and thereupon went forward to their respective purchasers at various places in the United States. The importer appealed to reappraisement under the provisions of the Tariff Act of October 3, 1913. The single general appraiser appraised the goods at invoice price plus a tax of 1½ per centum. The Government applied for a review and, upon a hearing, the Board of General Appraisers approved the appraised value, making an additional allowance to the importer for insurance and cartage. The collector having liquidated the entries on the basis of the re-reappraisement, the importer protested, claiming that the appraisement, reappraisement, and re-reappraisement were all illegal and void because of the failure of the customs officials to designate, examine, and retain samples of the merchandise as provided by section 2901, Revised Statutes. Upon the hearing on this protest, the importer called as a witness the examiner at the port of Buffalo and established by him that he had, at the direction of the collector, examined all the packages of meat imported at the Greene Street express office, and had made his appraisement thereon; that no particular packages were designated for examination, but the entire shipment; that no samples were retained by the customs officers, but the entire shipment was released; that no samples were sent to the Board of General Appraisers.

· The Customs Court held that the respective judgments of the single general appraiser and of the board, in reappraisement and re-reappraisement, were, respectively, void because samples were neither present nor reasonably accessible for inspection, but that the appraisement by the local appraiser was valid and should be taken as the dutiable value. The importer has appealed from the judgment of the Customs Court, alleging that the court below erred in not finding the appraisement made by the local appraiser to be invalid, because of the failure to retain samples, and that the invoice prices should be the basis of assessable values. The Government files no cross appeal.

There is, therefore, but one issue presented, namely: Did the failure of the customs officials to designate and retain samples invalidate the appraisement of the local appraiser?

In addition, the appellant contends that, even conceding the appraisement of the local appraiser to be valid when made, the appeal to reappraisement vacated and set aside such appraisement and, the judgments in reappraisement and re-reappraisement being

void for lack of jurisdiction, there is no valid appraisement and the invoice prices must be taken as the dutiable values. These questions will be dealt with as stated.

Section 2901, Revised Statutes, originally enacted and approved August 30, 1842 (5 Stat. [Pet.] 565), was in force at the time of the importations in question here. The section was as follows:

Sec. 2901. The collector shall designate on the invoice at least one package of every invoice, and one package at least of every ten packages of merchandise, and a greater number should he or either of the appraisers deem it necessary, imported into such port, to be opened, examined, and appraised, and shall order the package so designated to the public stores for examination; and if any package be found by the appraisers to contain any article not specified in the invoice, and they or a majority of them shall be of opinion that such article was omitted in the invoice with fraudulent intent on the part of the shipper, owner, or agent, the contents of the entire package in which the article may be shall be liable to seizure and forfeiture on conviction thereof before any court of competent jurisdiction; but if the appraisers shall be of opinion that no such fraudulent intent existed, then the value of such article shall be added to the entry, and the duties thereon paid accordingly, and the same shall be delivered to the importer, agent, or consignee. Such forfeiture may, however, be remitted by the Secretary of the Treasury on the production of evidence satisfactory to him that no fraud was intended.

It is not controverted by the appellant that the local appraiser examined and inspected the whole of the goods imported here, at the railway express terminal, but it is argued that section 2901, *supra*, is mandatory and must be complied with to make a valid assessment; that the collector must designate the packages required thereby and order them to the public stores for examination; that the examination by the appraiser must be at such public stores; that the samples must be preserved after such appraisement, for the benefit of both the Government and the importers pending reappraisement and re-reappraisement; that, if this is not done, the importer is deprived of the right of appeal, because of the absence of legal samples; and that, therefore, unless these samples are so designated, examined, and preserved, the appraisement by the local appraiser is a nullity.

The force and effects to be given to said section 2901 and similar provisions of law has been stated in several decisions of the Supreme Court. In *Erhardt* v. *Schroder*, 155 U. S. 124, the court had under consideration section 2939, Revised Statutes, which was as follows:

Sec. 2939. The collector of the port of New York shall not, under any circumstances, direct to be sent for examination and appraisement less than one package of every invoice, and one package at least out of every ten packages of merchandise, and a greater number should he, or the appraiser, or any assistant appraiser, deem it necessary. When the Secretary of the Treasury, however, from the character and description of the merchandise, may be of the opinion that the examination of a less proportion of packages will amply protect the revenue, he may, by special regulation, direct a less number of packages to be examined.

It was claimed there was no legal appraisement of the imported tobacco because the provisions of said section had not been complied with. The court did not coincide with this view and said, in part:

The protection of the convenience only of a taxpayer is not of such a vital nature as to authorize a court to treat a statute primarily directed to public officers for their guidance, and the substantial protection of the Government, as mandatory, and to consider official acts not in strict conformity with the statute as void. The protection must be substantial, and must be intended as a guard of rights or property. (Cooley on Taxation, 215, 216.)

Again, in *Origet* v. *Hedden*, 155 U. S. 228, seven packages were sent to public stores and were not all examined by the appraiser. It was claimed by the importer that it was the "imperative duty" of the appraiser to examine all such packages, and that failing therein, the appraisement was invalid. The court said:

On behalf of the Government it is argued that sections 2901 and 2939 were intended for the benefit of the Government and not of the importer; but although that was the primary intention, we are not inclined to deny that it might happen where the collector had given specific direction for the examination of more than one package out of ten, and the importer had relied on the direction, the omission to examine the number of packages directed might under some circumstances be availed of by him as constituting a want of the examination to which he was entitled.

In *United States* v. *Ranlett and Stone*, 172 U. S. 133, an importation of mixed bags was examined by the appraiser, but not in strict conformity with said section 2901. The court said:

But it is said that the appraisement was invalid because the examination was not in accordance with section 2901 of the Revised Statutes. That section, however, was intended for the benefit of the Government, and we have held that it is not mandatory, and that official acts are not invalidated for want of strict compliance therewith. *Erhardt* v. *Schroeder*, 155 U. S. 124, 125; *Origet* v. *Hedden*, 155 U. S. 228.

The importations in *Erhardt* v. *Schroeder* and *Origet* v. *Hedden*, *supra*, were made while section 2930, Revised Statutes, was in force. That section provided for an appeal by the importer to a merchant appraiser and a general appraiser, or to two merchant appraisers The latter case cited, *United States* v. *Ranlett and Stone*, was controlled by the customs administrative act of June 10, 1890, which provided for appeals to the General Appraisers in reappraisement matters.

Such was the state of the authorities when this matter first came under inquiry in this court in *Loeb* v. *United States*, 1 Ct. Cust. Appls. 385, T. D. 31479. There the question was whether a failure of the Board of General Appraisers to examine the "samples" designated by the collector under the provisions of section 2901, Revised Statutes, rendered the decision of such board void for want of jurisdiction. This court held the reappraisement to be invalid

for the reason stated. It was further held that a consideration of the language of sections 2899 and 2901, Revised Statutes, together with the Treasury regulation of November 1, 1890, T. D. 10355, lead to the conclusion that the packages to be designated by the collector and sent to general stores were intended to be retained there until final appraisement or reappraisement, as a part of, or exhibit in, the case, and that it was mandatory that the reappraising board examine them, in order to constitute a valid reappraisement. In coming to this conclusion, the court distinguishes *Erhardt* v. *Schroeder* and *United States* v. *Ranlett*, *supra*, holding that these cases were classification matters, and hence, questions of values not being involved, the same strictness of holding was not required as in reappraisement, matters. In conclusion, the court calls attention to the fact that, although the statute required an examination of all the goods by the appraising officer or officers, it had provided a statutory equivalent by permitting the designation of one package out of ten.

The above case was followed by *Tilge* v. *United States*, 1 Ct. Cust. Appls. 462, T. D. 31507. In this case, on reappraisement, the goods had gone into consumption, and certain "consular" samples furnished by the exporter through our consular service were offered as evidence. The court said:

As we have already held, in the *Loeb & Schoenfeld* case, section 2901 of the Revised Statutes requires that the *collector shall select* at least one package of every invoice, and at least one of every ten packages of the importation for the purposes of examination in appraisement proceedings. We held in that case that these packages must be examined by the appraiser and board of general appraisers in order that a valid appraisement may obtain. * * *

While this practice is a commendable one in the interests of a correct administration of the customs laws, in that it affords the appraising officers a check by which they can compare the consular samples with the regularly selected and designated samples in the appraisement of merchandise, we do not think it can in any sense be held a compliance with the law, that *the collector* shall select a certain number of samples of the importation and designate these for examination while in the customs' custody. The law admits of no substitute processes other than it provides; but, as we have held, is mandatory in its provisions. * * *

In exceptional cases, undoubtedly, it may appear that justice may be had by a substituted procedure, but we think that the interests of all, until the prescribed procedure is duly changed, better subserved by a uniform observance of the methods prescribed by Congress and the regulations of the department, which epitomize the legislative wisdom and the experiences of customs officials and the Treasury Department in the collection of the customs revenues of the Government for over a hundred years. Any other course would be legislation. * * *

We think that the Congress having prescribed that samples for examination in reappraisement cases shall be taken in certain numbers or quantities by certain officials, there can be no legal substitute therefor except by legislation, which this court is not empowered to enact. The production before the appraisers of other samples, however much they may, and probably do, add to the correctness of their conclusions by way of comparison or otherwise, are nevertheless insufficient as a substitute for jurisdictional purposes.

A rehearing was ordered in *Tilge* v. *United States, supra,* and upon such rehearing a per curiam opinion was filed, which appears in 2 Ct. Cust. Appls. 149. Here the court explained that its former opinion in the case must not be understood as holding that an appraisement was necessarily void unless the appraiser examined the public-store packages, but that such holding was to be understood as to the effect that substitute processes were provided by the law. The court reaffirms, however, its conclusion that section 2901 is mandatory. Attention is also called to articles 896 and 1543, Treasury Regulations 1908, and Rules XXIX and XXX of the Board of General Appraisers, which provide a method of selecting samples from the designated packages in public stores for further consideration in reappraisement, and which machinery permits the release of the public-store packages. The court also suggests that if these samples are found to be insufficient, the goods themselves may be brought in under the provisions of sections 2801 and 2899, Revised Statutes. These, it is said, are the substitute processes referred to by it in its original opinion.

Cattle on the hoof were imported, in *United States* v. *Scanlan,* 5 Ct. Cust. Appls. 290, T. D. 34473. After appraisement by the local appraiser, they went into consumption. No samples were before either the single general appraiser or the board, on reappraisement and review. The court said:

It is certainly the settled rule under the tariff act in question that the single general appraiser could not lawfully reappraise an importation upon such an appeal in the total absence of the merchandise and of samples thereof.

In this case, the importation being live cattle, it was impractical to designate and retain samples. The importer therefore argued that he was thereby deprived of the right to an appeal, without fault on his part. But the court determined that this presented a legislative and not a judicial problem, and held the proceedings in reappraisement to be void.

A number of cases of brushes of various kinds were imported, in *McKesson & Robbins* v. *United States,* 11 Ct. Cust. Appls. 459, T. D. 39534. Cases were sent to the appraiser's stores for examination, but these contained samples of a part of the goods only. The appraisement by the local appraiser and the general appraiser were based on examination of these samples. The importer appealed from the collectors' classification, claiming the appraisements were void for lack of proper examination. The Board of General Appraisers overruled the protest. This case, for the first time, brought the provisions of the Tariff Act of October 3, 1913, under scrutiny. This court called attention to the fact that prior to the date the last mentioned act became effective, the courts had universally held that appraisements of merchandise made without an examination and in-

spection of the merchandise, or of samples thereof, were invalid. However, the court called attention to the further fact that, under paragraph M of Section III of the said act of 1913, such examination and inspection by the single general appraiser or by the Board of General Appraisers were not necessary where no party in interest had demanded the inspection thereof, and where the same were reasonably accessible for inspection. The court reiterates that it is the mandatory duty of the collector, under section 2899, Revised Statutes, to designate for examination and appraisement 1 package out of 10, or more if necessary, and that, if the goods are released on bond, and not returned upon demand of the collector, the only remedy of the Government is not on appeal to reappraisement but by suit upon the collector's bond. In conclusion, the court held that the reappraisement, as to merchandise represented by samples before the single general appraiser, was valid, even though the statute as to the designation of packages had not been strictly complied with. The holding of the court in respect to the effect of an appeal to reappraisement upon the appraisement of the local appraiser will hereinafter, and in conjunction with another point in this case, be further referred to.

The next leading case on the subject is *United States* v. *Michelson & Co.*, 12 Ct. Cust. Appls. 402, T. D. 40584. Raw tomatoes, perishable, were imported and, after examination and appraisement by the local appraiser, were released into consumption, no packages or samples being retained. Appeals to reappraisement and re-reappraisement followed. On protest after classification, the Board of General Appraisers held the appraisements by the single general appraiser and the board to be invalid, no samples being present or accessible. This judgment was affirmed by this court. While the question of the validity of the appraisement by the local appraiser was not directly raised by the assignment of errors in that case, the matter was discussed in both the briefs of counsel and by this court in its opinion, and the final judgment of this court was a holding that the judgments of the single general appraiser and of the board were invalid, but that the appraisement of the local appraiser should be taken as the basis of dutiable value. A significant portion of the opinion is as follows:

The *Scanlan* case, moreover, shows that the Treasury Department then held that a legal reappraisement could not be made in the absence of the merchandise or samples thereof, and in the opinion it was pointed out that, although in exceptional cases this might result in depriving the Government or the importer of the remedy of reappraisement, that, nevertheless, such policy had been adopted rather than the opposite one, "whereby either party might be exposed to the uncertainties attending a reappraisement upon expert testimony in the entire absence of the merchandise or samples thereof."

As to the Government's argument that when perishable merchandise is imported it is "ridiculous" to say that samples must be preserved in order to enable a reappraisement tribunal to make a legal appraisal thereof, it may be observed

that such requirement is now no more ridiculous than it always has been. That condition, if ridiculous, does not seem to have moved the executive department charged with the enforcement of customs laws to attempt to change the long-existing practice of Congress to modify it in any respect prior to the act of 1913.

*United States* v. *Rolls-Royce,* 13 Ct. Cust. Appls. 259, T. D. 41202, concerned an importation of automobile chassis. After examination and appraisement, these were released into consumption. Appeals to reappraisement and re-reappraisement were had, where the values were advanced. The importer protested in the classification proceedings, and the board sustained the protest, holding the reappraisement and re-reappraisement judgments to be invalid. This court affirmed that judgment. While the point was not directly raised, here again the effect was to sustain the appraisement made by the local appraiser.

From these authorities, it is apparent that the mandatory duty is imposed upon the collector to designate one package in ten, or more, of the imported goods for examination, and that one of the objects of such designation is that there may be available samples for the inspection and examination of succeeding appraising and reviewing tribunals. But it is recognized by the courts that there are exceptional cases where such designation can not or ought not to be made. In the case of changing or perishable goods, such as arose with the importation of live cattle in the *Scanlan case, supra,* and fresh tomatoes in the *Michelson case, supra,* obviously samples can not be retained, and the Congress has provided no substitute. Heavy machinery, as in *United States* v. *Kuyper,* 15 Ct. Cust. Appls. 4, T. D. 42129, may be examined and appraised where set up for use. Imported merchandise, already delivered to the importer and not having entered into consumption, may be recalled upon the importer's forthcoming bond, for inspection and examination. It can not, therefore, be said that, under the Tariff Act of October 3, 1913, and preceding statutes, unless one package in ten, or more, were designated by the collector and sent to the public stores, all proceedings in the matter of the appraisement of the goods were a nullity.

In addition, it is equally plain that there are cases where the appraisement is not invalidated by the failure of the collector to send the goods, or packages, to public stores. Section 2949, Revised Statutes (July 14, 1842 [5 Stat. (Pet.) 566]), provided that the Secretary of the Treasury might establish rules and regulations not inconsistent with law, to secure a "just, faithful, and impartial appraisal of all merchandise imported into the United States." Thereunder, such regulations have been promulgated. The Supreme Court in *Kimball* v. *The Collector* (10 Wall. 436 [449]) said:

Packages intended for examination by the appraisers are usually sent to the public store for that purpose, but cumbrous articles may be examined on the

wharf where they were landed, and samples may, in certain cases, be used for the same purpose instead of the packages from which they were selected by the sampler.

Treasury Regulations, for many years, have provided for the examination of bulky articles at the wharf, or other suitable place, wherever designated by the collector. Cust. Reg. 1874, art. 407; Cust. Reg. 1884, art. 449; Cust. Reg. 1892, art. 828; Cust. Reg. 1899, art. 1242; Cust. Reg. 1908, art. 851; Cust. Reg. 1915, art. 230. In the same general customs regulations, provisions have been made for the examination of goods by samples where the goods are sold by samples, at the home of the importer where the goods are otherwise liable to injury, of matches and other dangerous articles at the importer's store, of machinery and other bulky articles at the premises of the importer or owner. See also arts. 565, 567, Cust. Reg. 1915; arts. 853, 854, 855, Cust. Reg. 1908; art. 1243, Cust. Reg. 1899; art. 408, Cust. Reg. 1874.

This long line of administrative practice, apparently always concurred in by both the Government and importers, and evidently intended to promote the interests of both, demonstrates that a certain amount of flexibility must be given to sections 2899 and 2901, Revised Statutes. Without denying in any degree their mandatory quality, there are still well-understood and perfectly logical and reasonable exceptions to their strict letter.

With these general observations, what is the situation in the case at bar? The collector ordered all of the goods to be examined at the railway express terminal. The goods were smoked meats, each package shipped to a different importer. Necessarily they must all be examined or the importers might well protest. If they were bulky goods, under the customs regulations, the collector might order them examined where he did. There is no showing on this point, and every intendment must be in favor of the correctness of the official action of the collector. It was not the business of the appraiser to question this, but to appraise the goods where directed, which he did. He, therefore, made a proper examination upon which to base his appraisement. The goods were smoked meats, and the courts will take judicial notice, in the absence of anything in the record to establish the contrary, that such meats may be perishable. If the goods imported here were, in fact, perishable, then they came within the class of cases represented by the *Scanlan* and *Michelson cases*, *supra*, and further illustrate the need for additional legislation. No samples having been preserved, and every presumption being in favor of the correctness of the appraiser's action, we must presume he found the goods to be perishable and incapable of preservation.

Our conclusion is, therefore, on this phase of the case, that the appraisement made by the local appraiser was valid and was not invalidated by the subsequent failure to retain samples.

We then pass to the second contention, namely, that the appraisement of the local appraiser was vacated by the appeal to reappraisement and that, therefore, the invoice value must be taken for dutiable purposes.

We are unable to agree with the importer in this contention. In *United States* v. *Scanlan, supra,* considering the same question under the Tariff Act of August 5, 1909, we said:

It therefore appears of record in the present case that the appraisement made by the single general appraiser upon appeal was invalid. In this contingency the appraisement theretofore made by the local appraiser necessarily became again operative, and the collector was required to adopt that valuation in making his assessment.

It is true, this court said in *McKesson & Robbins* v. *United States, supra,* speaking of the appraisement by the local appraiser:

His appraisement, however, was vacated by the importer's appeal to reappraisement, which appeal imposed on the general appraiser the duty of making a new appraisement and of determining de novo the value of the goods.

In discussing these apparently contradictory views, this court, in *United States* v. *Michelson, supra,* said:

The Government asserts that our decisions in the *Scanlan* and *McKesson* cases are not in harmony, because in the former we held that the collector should liquidate on the basis of the appraisement of the local appraiser while in the latter it was held that the invoice value must control the liquidation.

A little examination of the opinions in those two cases, however, will disclose that in the *Scanlan* case the appraisement of the local appraiser was based upon an inspection of the importation, while in the *McKesson* case the local appraiser never saw or examined the merchandise or samples thereof, the appraisement of which was challenged. Upon this state of facts in that case the invoiced or entered value was the only value upon which liquidation could be founded, while in the *Scanlan* case a valid appraisement had obviously been made by the local appraiser.

The view thus expressed was also the view of the Circuit Court of Appeals of the Second Circuit, found in *United States* v. *Curnen & Stiner,* 146 Fed. 45. We approved the same rule in *United States* v. *Kuyper & Co., supra,* which is our most recent pronouncement on the subject.

Every reasonable intendment favors such a construction. The appraisement of the local appraiser may be likened to the judgment of a court of inferior jurisdiction, which, in default of appeal or writ of error, is final and conclusive. Where an appeal or writ of error is attempted to be prosecuted, and such attempted review fails because of lack of jurisdiction by the appellate court, it can not be said that the judgment below is vacated, but rather that it is held in suspension; it being determined that there is no valid appeal, it becomes at once vital and effective. Such is the well-understood rule. *Gottlieb* v. *Thatcher,* 151 U. S. 271; *Rock Island Nat. Bank* v. *Thompson,* 173

Ill. 593, 50 N. E. Rep. 1089; *Mercantile Trust Co.* v. *St. Louis &
S. F. Ry. Co.*, 69 Fed. 193; *Dinwiddie* v. *Shipman*, 183 Ind. 82, 108
N. E. 228; Black on Judgments, secs. 471, 473, and 960.

The judgment of the Customs Court should therefore be, and the
same is hereby, *affirmed*.