## UNION IMPORTING CO. v. UNITED STATES

No. 4558.—Invoices dated Naples, Italy, October 15, 1935, etc.
Certified October 16, 1935, etc.
Entered at Boston, Mass., November 5, 1935, etc.
Entry Nos. 1211, 4763, 1211, 6853, 4763.

(Decided April 21, 1939)

*Joseph F. Lockett* for the plaintiff.

*Webster J. Oliver*, Assistant Attorney General (*Joseph E. Weil* and *Frank E. Carstarphen*, special attorneys), for the defendant.

DALLINGER, Judge: These appeals to reappraisement involve the question of the dutiable values of certain tomatoes imported in tins

packed in boxes or cartons. They were exported from Italy during the latter part of 1935 and entered at the port of Boston.

At the hearing held before me at that port on October 7, 1938, counsel for the plaintiff moved to dismiss the appeals on the ground that the appraisements were null and void, for the reason that the collector failed to designate, and the appraiser failed to examine, one out of every ten packages, as required by section 499 of the Tariff Act of 1930.

Pursuant to an agreement between counsel for the respective parties it was agreed that the following statement correctly represents the marks and numbers as they appear upon the official papers:

Statement of the number of cases and cartons of tomatoes in tins covered by the following reappraisement cases under the caption Union Importing Company (A. J. Capone Co.) *v.* United States, tried at Boston before Dallinger, J, on October 7, 1938.

| Reap. 120239–A/2656 | Entry 1211 | 875 boxes of 24 tins each |
| | | 375 boxes of 48 tins each |
| Reap. 120543–A/2682 | Entry 4763 | 469 cases of 24 tins each |
| | | 375 cases of 48 tins each |
| Reap. 122579–A/94 | Entry 1211 | 500 boxes tomato sauce of 100 tins each |
| Reap. 123012–A/95 | Entry 6853 | 400 cases of 24 tins each |
| | | 100 cases of 48 tins each |
| | | 100 cases of tomato sauce of 100 tins each |
| Reap. 123629–A/96 | Entry 4763/1 | 406 cases of 24 tins each |
| | | 500 cases of tomato sauce of 100 tins each |

In addition counsel for the respective parties in their briefs filed herein have agreed that the following schedule correctly represents the pertinent facts (other than the marks and numbers) as they appear upon the said official papers:

*Reap. 120239–A/2656*    Entry 1211    S. S. Exeter arrived 11/5/35
Summary Sheet:
  "Packages to be examined": (ink notation) AJC/L—one
                                            AJC/S—one
                             (stamp) "Bal. 1 in 10 on whf."
                             (stamp) "Completed"
  "Examiner and date of examination": (stamp) "April 8, 1937"
                                      (red ink) "M. J. F."
                                      (stamp) "Examined on wharf
                                               R. H. H.
                                               Examiner"
                             (stamp) "April 17, 1937"
                             (signed) "J. L. Dunn"
                             (printed) "Appraiser"

*Re-ap. 120543–A/2682*     Entry 4763     S. S. Alberta arrived 10/21/35
Summary Sheet:
   "Packages to be examined": (ink notation) 1 c/s—24 tins
                                  1 c/s—48 tins
                            (stamp) "Bal. 1 in 10 on whf."
         Directly on this—(stamp) "Completed"
   "Examiner and date of examination": (stamp) "April 13, 1937"
                            (red ink) "M. J. F."
                            (stamp) "Examined on wharf
                                      R. H. H.
                                      Examiner"
                            (stamp) "April 28, 1937"
                            (signed) "J. L. Dunn"
                            (printed) "Appraiser"

*Re-ap. 122579–A/94*     Entry 1211     S. S. Exeter arrived 11/5/35
Summary Sheet:
   "Packages to be examined": (stamp) "Ex one
                                Bal. 1 in 10 on whf."
                            (stamp) "Completed"
   "Examiner and date of examination": (stamp) "April 4, 1937"
                            (red ink) "M. J. F."
                            (stamp) "Examined
                                    T. F. Bird
                                  Examiner"
                            (stamp) "Oct. 30, 1937"
                            (signed) "J. L. Dunn"
                            (printed) "Appraiser"

*Re-ap. 123012–A/95*     Entry 6853     S. S. Giulia arrived 12/2/35
Summary Sheet:
   "Packages to be examined": (ink notation) "1 c/s—24 tins
                                  1 c/s—48 tins
                                  1 carton 100 tins"
                        (stamp) "Bal. 1 in 10 on whf."
                        (stamp) "Completed"
   "Examiner and date of examination": (stamp) "Aug. 5, 1937"
                            (red ink) "M. J. F."
                            (stamp) "Examined
                                    T. F. Bird
                                  Examiner"
                            (stamp) "Oct. 30, 1937"
                            (signed) "J. L. Dunn"
                            (printed) "Appraiser"

*Re-ap. 123629–A/96*     Entry 4763     S. S. Alberta arrived 10/21/35
Summary Sheet:
   "Packages to be examined": (ink notation) "100 tins
                                  1 c/s 250 gram tins
                                  1 do. 24 tins
                        (stamp) "Completed"
   "Examiner and date of examination": (stamp) "Aug. 4, 1937"
                            (red ink) "M. J. F."
                            (stamp) "Oct. 26, 1937"
                            (signed) "J. L. Dunn"
                            (printed) "Appraiser"

The plaintiff offered in evidence the testimony of five witnesses. The Government submitted no evidence.

The first witness, Martin J. Finnegan, examiner of merchandise at the port of Boston since August 15, 1935, testified that out of 844 cases covered by reappraisement 120543–A, 2 cases were designated for examination and were opened and examined by him.

On cross-examination he testified that the two cases in question were examined at the appraiser's stores, and that he never saw Examiners Bird or Haskins or anyone else examine any merchandise on the wharf.

Recalled later during the hearing the same witness testified that within the week of November 5, 1935, he made the examination testified to by him, but that he did not put on the rubber stamp "Ex. 1—Bal. 1 in 10 on Whf." until August 4, 1937.

At this juncture it was agreed between counsel that James L. Dunn, appraiser at the port of Boston, did not examine any of the merchandise.

The witness then testified that out of the 906 cases covered by reappraisement 123629–A only 2 cases were sent to the appraiser's stores, there being no designation by the collector on the summary sheet and no rubber stamp showing any examination by a wharf examiner; and that he had heard that the wharf examiners kept books but had never seen any.

The same witness being again recalled toward the close of the hearing testified that a box marked in evidence as Exhibit 3 was a typical case of the merchandise at bar.

On cross-examination he testified that in his opinion it would take an opener four minutes to open, examine, and close one of the cases of the merchandise at bar; that it would take about 2 minutes to open one of the cartons and examine the contents; and that he very seldom opened any of the cases himself.

The plaintiff's second witness, James L. Dunn, United States appraiser at the port of Boston, testified that he opened and examined none of the cases at bar, and that the practice at Boston with reference to the imposition of the rubber stamp by the wharf examiners was as follows:

After the inside examiner makes his report on the invoice the messenger takes the invoice from his office to the invoice room, from where it is sent to the wharf examiner's office. The wharf examiner, who examines the merchandise on the wharf, places his stamp on it, indicating that he has examined on the wharf the merchandise ordered for examination. That the invoice is collected from there by the messenger and brought to the invoice room, from where it is sent to my office for signature or for completion of the appraisal.

On cross-examination he testified that there was nothing in the papers to indicate that only two cases were opened.

The plaintiff's third witness, Ralph H. Haskins, formerly employed as examiner of merchandise at the port of Boston, testified that he

retired from the service of the Government the last of April 1937. He was then asked by counsel for the plaintiff if as a matter of fact he did not retire February 28, 1937, to which he replied that he certainly worked for the Government longer than that.

At this juncture James L. Dunn, the appraiser, being recalled testified that Examiner Haskins retired on February 28, 1937, and that he did not examine any merchandise after that time.

On being recalled the witness Haskins testified that he desired to change his testimony. He then testified that he had been a wharf examiner previous to his retirement on February 28, 1937, and covered the South Boston and Atlantic Avenue wharfs as well as the Hoosic docks and Mystic wharf; that at the time he was employed there were three wharf examiners including himself. On being shown a stamp on the summary sheet reading "Examined on wharf, R. H. H., Examiner" he was asked if "R. H. H." were his initials, and whether he had put that stamp on. He answered that the initials were his but that he could not tell the date when the stamp was imposed. His attention was then called to the fact that the witness Finnegan had testified that he (Finnegan) had made his appraisement on April 13, 1937, and that it was the practice to put the stamp on after the examiner had affixed his initials. He then testified as follows:

Q. * * * Then you must have put the stamp on over a month and a half after you had left the service.—A. That would not be possible.

Q. I am asking you to explain?—A. Because of the fact that I examined the goods, the stamp was left in the building; it was not taken away by me. It might have been used by somebody else, because I examined the goods.

Judge DALLINGER. Was that stamp put on when you put those initials on?

The WITNESS. I didn't put any initials on.

The witness then testified that shipments of tomatoes were very large, in some cases comprising the entire cargo of the ship; that he did not remember how many of the involved cases he had opened; that in the course of his duties he was obliged to examine lots of merchandise besides tomatoes; that he did not know why there was no rubber stamp showing an examination by the wharf examiner on the summary sheet in the case of reappraisement 123629–A; and that in that shipment there were 900 cases.

On cross-examination he testified that although, in reappraisement 120543–A where, under the summary sheet under the words "Examiner and date of examination" appears the stamp "April 13, 1937," his actual examination was made in 1935 shortly after the arrival of the merchandise; that where the examination of one out of ten on the wharf was designated, the practice was to open one in ten of the cases; that the only one of the reappraisements at bar where the witness complied with the designation to examine one out of ten of the cases on the wharf was reappraisement 120543–A; that in the case of reappraisement 123629–A he did not make any examination because

none was designated by the collector; and that in reappraisements 123012–A and 122579–A he made no examination. ·

On redirect examination he testified that he recalled his testimony before Tilson, J., in the case of *Pistorino & Co. v. United States*, protest 938093–G, where the merchandise was similar to that involved herein, to the effect that the steamers brought in large quantities of tomatoes in tins; that he would not say that of all the thousands of cases of tomatoes in tins which he passed he had opened and examined one out of every ten cases; that he had one man and sometimes two men to help him, and that three men had handled thousands upon thousands of cases; that he did not open 10 per centum of the cases but that he examined one-tenth of said cases; and that it took three minutes to open and examine a case of tomatoes in tins.

The plaintiff's fourth witness, Thomas F. Bird, United States examiner at the port of Boston during the year 1935, testified that he covered the East Boston and Mystic wharfs; that he was the examiner who passed the merchandise covered by reappraisement 122579–A comprising 500 boxes of tomatoes in tins; that he put his rubber stamp "Examined T. F. Bird, Examiner" on after Mr. Finnegan, the appraiser, had dated and initialed the cases; that he opened many of the wooden cases; that he did not open any of the cans in the cases; and that in a lot of sixty cases he might open four.

On cross-examination he testified that some of the cans of tomatoes were packed in slat boxes and some in cardboard boxes; that in some of the wooden slat boxes some of the cans were visible from the outside; that in order to open the wooden boxes it was necessary to use a hammer and chisel; that some of the cases he opened and some he could see the cans through the slats; and that between the two he had examined one out of every ten cases.

On redirect examination he testified that his examination consisted largely of walking around the piles of cases and boxes on the dock; and that if he had opened a box of tomatoes it might take him five minutes.

On recross-examination he testified that although the date of examination appeared on the summary sheet as August 4, 1937, as a matter of fact his examination was made shortly after November 5, 1935.

Being recalled the same witness testified that he did not know why there was no rubber stamp calling for balance of one in ten to be examined in reappraisement 123629–A; that he kept some sort of a record of his activities on the wharf but that everything had been destroyed; that reappraisement 123012–A covered Mr. Haskins' shipment; that the reason why the stamp of the witness instead of that of Mr. Haskins appears on the summary sheet probably was that Haskins did not know where his own stamp was; and that he

(the witness) did not open or examine any of the boxes involved in the latter reappraisement.

The plaintiff's fifth witness, Joseph Goldenberg, part owner of the business conducted by the plaintiff, testified that his firm did a very large business importing tomatoes in tins; that it was his practice to open the cases and examine the cans at the time of importation; that many of the cases were in better condition than the sample which was introduced in evidence as Exhibit 1, but that the cartons were properly represented by the sample in evidence as Exhibit 2; that it took him from six to eight minutes to open and examine one case and put the tins back therein; and that it took him from four to five minutes to do the same in regard to the cartons.

The plaintiff's sixth and last witness, Louis Lo Conte, president of the Musolino, Lo Conte Co., wholesale importers of groceries, testified that he had been importing tomatoes in tins and cartons for the last thirty-five years; that Exhibit 1 fairly represents the condition of the wooden cases in which the cans of tomatoes are packed; and that Exhibit 2 fairly represents the condition of the cartons in which similar merchandise was imported.

During the course of the hearing, in addition to Exhibits 1 and 2, the Government introduced a third case of tomato tins which was admitted in evidence as Exhibit 3, the Government claiming that it was more representative of the actual cases than was Exhibit 1 in that there was a greater amount of space between the wooden boards or slats so that the tins could be plainly seen.

Upon this record the plaintiff contends that the collector did not designate one in every ten of all the cases involved herein, and that one in ten was not opened and examined, as required by section 499 of the Tariff Act of 1930. I am satisfied that such contention is well founded. The pertinent provisions of said section 499 read:

SEC. 499. EXAMINATION OF MERCHANDISE.
  \*   \*   \*   The collector shall designate the packages or quantities covered by any invoice or entry which are to be opened and examined for the purpose of appraisement or otherwise and shall order such packages or quantities to be sent to the public stores or other places for such purpose. Not less than one package of every invoice and not less than one package of every ten packages of merchandise, shall be so designated unless the Secretary of the Treasury, from the character and description of the merchandise, is of the opinion that the examination of a less proportion of packages will amply protect the revenue and by special regulation permit a less number of packages to be examined.   \*   \*   \*

Article 307 (c) of the Customs Regulations of 1931 (as amended by T. D. 45936) reads:

(c) The collector shall designate, on the permit and on the summary sheet (customs Form 6417), the packages to be examined and may, if he deems it necessary, indicate them on the entry. If the merchandise is bulky, the collector

will direct examination on the wharf or other suitable place, subject to the approval of the appraiser. When merchandise is to be gauged, measured, or weighed, the collector will place the order therefor on the permit and summary sheet.

Article 308 (b) of said customs regulations reads:

(b) Under the head of "For examination" collectors will designate the packages to be examined by marks and numbers, if any, and the place where the examination is to be made.

There is no evidence in the record that the Secretary of the Treasury at the time of the instant importation had promulgated any special regulation permitting less than one out of every ten packages to be designated by the collector for examination by the appraiser.

In reappraisement 123629–A the rubber stamp reading "bal. 1 in 10 on wharf" was omitted, so that there was no designation by the collector at all. In reappraisement 120239–A the collector designated by marks and numbers only two cases for examination. In all of the reappraisements except 123629–A there appears imprinted on the summary sheets a rubber stamp notation reading "bal. 1 in 10 on wharf," but in my opinion this does not constitute a designation within the meaning of section 499 of the Tariff Act of 1930, and the customs regulations promulgated thereunder.

In *La Choy Food Products, Inc.* v. *United States*, Reap. Dec. 4080, 72 Treas. Dec. 1008, after referring to the following notation in lead pencil on the summary sheet in one of the cases: "1 Case 10% Dock Examination" the court said:

\* \* \* The said pencil notation of the collector would seem to indicate either that 10 per centum of the tins in the one case should be examined at the dock, or that 10 per centum of the total number of cases in that particular shipment should be examined at the dock. Either procedure, however, would be contrary to the decision of the appellate court in *Carey & Skinner* v. *United States*, 16 Ct. Cust. Appls. 382, T. D. 43118, in that, according to the uncontradicted evidence herein, the instant merchandise was neither bulky nor perishable. Moreover, the appraiser's red-ink notation shows that he actually examined but one case, to wit, No. 2369.

In the instant case it is manifest from the samples in evidence that the involved merchandise is neither bulky nor perishable.

In the recently decided case of *Northam Trading Corp. et al.* v. *United States*, Reap. Dec. 4413, the merchandise consisted of "strike-on-the-box" safety matches of Russian manufacture imported from Holland. It appears that the collector or his representative merely wrote on the summary sheet the abbreviation "whf" which it was agreed meant wharf. Counsel for the Government contended that such was a proper designation that all of the packages should be examined on the wharf. McClelland, P. J., ruled as a matter of law that there was no proper designation of the merchandise within the meaning of section 499 of the Tariff Act of 1930.

In *New York Merchandise Co. Inc.* v. *United States*, Reap. Dec. 4401, decided September 29, 1938, while the same judge held that the words "bal. examined at dock" after naming by number certain cases, was a legal designation within the meaning of said section 499, he also held that the appraisement was null and void because the appraiser had not opened and examined one in ten cases, as required by said section.

In the instant case I am satisfied upon the entire record that in none of the appeals herein was one-tenth of the packages opened and examined, as required by law.

I therefore find that the mandatory provisions of said section 499 and of the customs regulations prescribed thereunder were not complied with in the instant case, and that therefore the appraisement in each instance must be and the same hereby is held to be null and void *ab initio.* *United States* v. *Steffan & Sons*, 18 C. C. P. A. 455, T. D. 44702; *United States* v. *V. M. Davis et al.*, 20 C. C. P. A. 305, T. D. 46087; *United States* v. *Gilson Brothers*, 20 C. C. P. A. 117, T. D. 45753; *C. J. Tower & Sons* v. *United States*, 21 C. C. P. A. 417, T. D. 46943; *United States* v. *George W. Beermaker, etc.*, 23 C. C. P. A. 48, T. D. 47714; *United States* v. *Boston Paper Board Co.*, 23 C. C. P. A. 372, T. D. 48233; *United States* v. *C. J. Tower & Sons*, 24 C. C. P. A. 456, T. D. 48912; *Canadian Pacific Railway* v. *United States*, T. D. 49023; and *C. J. Tower & Sons* v. *United States*, T. D. 49003.

Judgment will be rendered accordingly.