(C. D. 738)

WILLIAM HEYER v. UNITED STATES

United States Customs Court, Third Division

(Decided February 24, 1943)

*John F. Reddy, Jr.*, for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Charles J. Miville* and *Joseph F. Donohue*, special attorneys), for the defendant.

Before CLINE, KEEFE, and EKWALL, Judges

EKWALL, Judge: This is an action against the United States in which the plaintiff seeks to recover money claimed to have been illegally collected as customs duties upon an importation of two horses imported and entered under paragraph 1747 of the Tariff Act of 1930. It is provided in that portion of the statute that certain "articles brought by proprietors or managers of theatrical exhibitions arriving from abroad, for temporary use by them in such exhibitions," etc., shall be allowed entry free of duty under a 6-months' bond. The horses were not exported within the terms of the bond and duty was accordingly assessed under paragraph 714 of the same act which provides that horses valued at more than $150 shall pay a duty of 20 per centum ad valorem.

It is claimed by the plaintiff, the importer, that the amount of duty assessed is in error because (a) a clerical error was made in the entry and (b) an illegal appraisement was made in connection with the entry. At the hearing the Government moved to dismiss the suit, first on the ground that while the pleadings claim clerical error, they are really directed against the action of the appraiser in valuing the merchandise and therefore cannot be the subject of a protest before this court. The second ground for the motion to dismiss was that the question raised by the protest is moot and therefore this court should not consider it.

Upon consideration of the motion the court held in effect that as the final appraised value of the horses was not "the same or less than the entered value would be, if corrected," but was higher, under the statute and the decisions this court was without power to grant relief by ordering reliquidation for clerical error. *J. E. Bernard* v. *United States*, 52 Treas. Dec. 504, T. D. 42525; *S. M. Levor & Co.* v. *United States*, Abstract 7361; *Philip Corre* v. *United States*, Abstract 7462; *C. J. Tower* v. *United States*, Abstract 8470; *J. J. McQuillan* v. *United*

*States*, T. D. 43736, affirmed in 18 C. C. P. A. (Customs) 215; and *Decorative Plant Co.* v. *United States*, Abstract 15078.

It was further stated in the decision on the motion that in view of the additional claim in plaintiff's pleadings the dismissal of the case might work an injustice on the plaintiff, and the court therefore denied the motion.

At the hearing on the merits an agreement was entered into between the parties to the suit as to the facts in connection with the examination of the horses at the time of entry, and testimony was introduced in an attempt to prove that the entry of the horses at a valuation of $5,000 and $2,000, respectively, was due to a clerical error on the part of the importer. From this testimony we gather that the importer, whose native language was French, and who was not able to speak English very fluently at the time of entry, discussed the question of the valuation with a representative of the American Express Co. who understood the French language. At the time of the trial this man was no longer alive. The *pro forma* invoice was filled out by said American Express Co.'s representative for the signature of the importer. The importer further stated that it was his understanding that the horses were being entered at a value in francs, not dollars, and the only discussion he had with the American Express Co.'s representative related to a value in francs.

There was introduced in evidence as exhibit 2 a certificate as to the physical condition of the two horses, made out and officially acknowledged in France, together with a translation of the same. This certificate describes the horses and states their value in francs. It was admitted in evidence with the understanding that it is limited to showing merely that it was displayed to the American Express Co.'s representative at the time the entry was made.

The basis for the plaintiff's claim that the appraisement is illegal is that the horses were not seen by the examiner who advisorily reported their classification and value to the appraiser. The parties litigant have stipulated the facts in connection with the examination as follows:

It is hereby stipulated and agreed by and between the attorneys for the parties hereto, that, under the direction and supervision of the assistant appraiser, the two horses the subject of this protest were viewed and inspected by Richard J. Keeler, an examiner's assistant; that said examiner's assistant reported his findings to the examiner; that the examiner reported them to the assistant appraiser; that the appraisement was based upon such findings and reports; that the examiner, William R. Crompton, did not personally see the horses, and that no examiner or assistant appraiser viewed the horses.

The duties of examiners of merchandise are defined in the statutes as follows (sec. 500 of the Tariff Act of 1930):

SEC. 500. DUTIES OF APPRAISING OFFICERS.

\* \* \* \* \* \* \*

(e) EXAMINERS.—It shall be the duty of an examiner to examine and inspect the merchandise and report the value and such other facts as the appraiser may require in his appraisement or report, and to perform such other duties as may be prescribed by rules and regulations of the Secretary of the Treasury or the appraiser.

The Secretary of the Treasury is given authority in the statute (sec. 502) to establish and promulgate rules and regulations necessary to secure a just, impartial, and uniform appraisement of imported merchandise. Under that authority the Secretary, in article 1386 of the Customs Regulations of 1937, sets out the duties of the examiners in the exact language of the statute above-quoted. It is plain that the duty of the examiner as defined above was not carried out in this case for the record shows that the examiner did not see the horses, nor did any other examiner or assistant appraiser. The Government in its brief contends that the provisions of section 500 (e) are not mandatory but directory and cites cases which distinguish between directory and mandatory statutes. In one of the cases cited, *Vaughan* v. *Winston Co.*, 83 Fed. (2nd) 370, 372, the court used the following language:

\* \* \* \* \* \* \*

Whether a statutory requirement is mandatory in the sense that failure to comply therewith vitiates the action taken, or directory, can only be determined by ascertaining the legislative intent. If a requirement is so essential a part of the plan that the legislative intent would be frustrated by a noncompliance, then it is mandatory. But if the requirement is a detail of procedure which does not go to the substance of the thing done, then it is directory, and noncompliance does not invalidate the act.

This court and the Court of Customs and Patent Appeals have held that the provisions in section 499 of the same act, providing for the method of examination of merchandise, are mandatory. *Carey & Skinner* v. *United States*, 16 Ct. Cust. Appls. 382, T. D. 43118; *United States* v. *Davis*, 20 C. C. P. A. (Customs) 305, T. D. 46087; *United States* v. *Gilson*, id. 117, T. D. 45753. It seems that the requirement that an examiner shall examine and inspect the merchandise is as much an essential part of the plan of appraisement as is the method of examination set forth in said section 499, and that the legislative intent that the statutory value of the merchandise shall be reported to the appraiser could not be carried out without such an examination and inspection. Such examination and inspection could not be considered "a detail of procedure which does not go to the substance of the thing done" but rather one which "is so essential a part of the plan that the legislative intent would be frustrated by a noncompliance." We so hold. Failure to comply

with the mandatory terms of the statute vitiates the action taken. There has therefore never been a lawful appraisement of the horses here involved.

Under such circumstances should the plaintiff be allowed to amend his entry? The statute sets out the conditions under which an importer may amend his entry in section 487 of the Tariff Act of 1930 as follows:

SEC. 487. VALUE IN ENTRY—AMENDMENT.

The consignee or his agent may, under such regulations as the Secretary of the Treasury may prescribe, at the time entry is made, or at any time before the invoice or the merchandise has come under the observation of the appraiser for the purpose of appraisement, make in the entry such additions to or deductions from the cost or value given in the invoice, as, in his opinion, may raise or lower the same to the value of such merchandise.

It is admitted that the merchandise did not come under the appraiser's observation. Plaintiff contends that neither did the invoice come under his observation for the purpose of appraisement because upon the information before him he could not lawfully make an appraisement. The provision in the statute undoubtedly was made in view of the presumption that public officials will act according to the law governing their actions. Therefore Congress must have had in mind a situation in which the invoice lawfully came "under the observation of the appraiser for the purpose of appraisement." In the instant case the invoice was improperly before the appraiser because, as pointed out above, the examiner had failed to comply with the law in that he had made no inspection of the merchandise, and had made his report to the appraiser without such inspection. We therefore hold that inasmuch as the invoice had not come lawfully under the observation of the appraiser for the purpose of appraisement, and the admitted fact that the merchandise had never been before the appraiser, the importer should be allowed to take advantage of the provision in the statute permitting him to amend his entry.

Judgment will be rendered in accordance with this decision.