UNITED STATES *v.* DANIEL F. YOUNG, INC. (MINOBU TRADING CORP.), ET AL. (No. 4233)[1]

[1] C. A. D. 73.

United States Court of Customs and Patent Appeals, October 30, 1939

*Webster J. Oliver*, Assistant Attorney General (*Dorothy C. Bennett*, special attorney, of counsel), for the United States.

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for appellee.

[Oral argument October 4, 1939, by Mrs. Bennett and Mr. Schwartz]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, Second Division, in reappraisements 112902–A, 112909–A, 112999–A, 113001–A, 120532–A, 120538–A, 120539–A, 110027–A, 110029–A, 110030–A, 110101–A, 110232–A, 111502–A, 111915–A, 111917–A, 112086–A, 112198–A, 112910–A, 113368–A, 113521–A, 113523–A, 119014–A, 112873–A, and 112877–A.

The merchandise involved consists of electric-light bulbs imported into the United States from Japan. All of the merchandise, except that involved in reappraisements 112873–A and 112877–A, which was entered at the port of Los Angeles, was entered at the port of New York, and was appraised by the local appraisers at the ports

of entry under the provisions of section 209 of the Antidumping Act, 1921, the Secretary of the Treasury having made a finding of "dumping," under section 201 (a) of that act, of electric-light bulbs imported into the United States from Japan. T. D. 46617, 64 Treas. Dec. 217.

On the trial below it was conceded by counsel for the importers (appellees) that the appraised values returned by the local appraisers were correct, should the appraisements be held valid. However, it was contended by counsel for appellees before the trial court and before the appellate division of the Customs Court, and it is their contention here, that the appraisements by the local appraiser at the port of New York were illegal and void, because, contrary to the provisions of section 499 of the Tariff Act of 1930, the collector designated, and the appraiser examined, less than "one package of every ten packages of merchandise" described on the invoices, and that the appraisements by the local appraiser at the port of Los Angeles were illegal and void, because the collector at that port designated that less than "one package of every ten packages of merchandise" described on the invoices should be examined at the "public stores," and that the remaining packages should be examined at the "dock." As to the Los Angeles entries, no claim is made that the collector failed to designate, or that the appriaising officials failed to examine, all of the packages contained in those importations. It is the contention of counsel as to those entries, however, that the collector had no authority, for reasons hereinafter stated, to designate that less than one package out of every ten packages of merchandise should be examined at the *public stores.*

Section 499, *supra,* so far as pertinent, reads:

SEC. 499. EXAMINATION OF MERCHANDISE.

Imported merchandise, required by law or regulations made in pursuance thereof to be inspected, examined, or appraised, shall not be delivered from customs custody, except as otherwise provided in this Act, until it has been inspected, examined, or appraised and is reported by the appraiser to have been truly and correctly invoiced and found to comply with the requirements of the laws of the United States. The *collector shall designate* the packages or quantities covered by any invoice or entry which are to be opened and examined for the purpose of appraisement or otherwise and shall order such packages or quantities *to be sent to the public stores or other places for such purpose.* Not less than one package of every invoice and not less than one package of every ten packages of merchandise, shall be so designated unless the Secretary of the Treasury, from the character and description of the merchandise, is of the opinion that the examination of a less proportion of packages will amply protect the revenue *and by special regulation permit a less number of packages to be examined.* The collector or the appraiser may require such additional packages or quantities as either of them may deem necessary. [Italics ours.]

On the trial before the single judge sitting in reappraisement counsel for the Government introduced in evidence Collective Exhibit 1, which consists of a book entitled "Treasury Department. Customs

Catalog 3418: C. F. C.: June 2, 1914 [the attention of the court being called particularly to pages 3 and 71]'' and a copy of a telegram, dated June 24, 1932, addressed to the Collector of Customs at New York, and signed by S. Lowman, Acting Secretary of the Treasury, which was accompanied by a certificate, dated November 17, 1937, signed by F. A. Birgfeld, Chief Clerk, Treasury Department, wherein it is stated that such copy is a true copy of the copy of the telegram on file in the office of the Commissioner of Customs, Washington, D. C.

The telegram referred to was introduced by the Government on the theory that it was an amendment to the heading at the top of page 3 of Customs Catalog 3418. It reads:

General Rule page Three Customs Catalogue Thirty-four Eighteen at head of list of imports changed to read as follows: "In the opinion of the Secretary of the Treasury the examination at the Appraisers Stores on the wharf or elsewhere of samples or representative packages although constituting a less proportion than ten percent of the shipment is considered amply sufficient to protect the revenue when merchandise is bought by sample or is imported in packages of same contents and value or when purchased at the same price per unit of weight gauge or measure, but in no case shall less than one percent be examined except upon specific authority from the Department."

Prior to the alleged amendment, page 3 of the catalog was headed—

List of Imports of which less than 1 package in 10 may be sent for examination to the United States Public Stores at the Port of New York, when packed in bottles, jars, tins, cases, or tin-lined barrels.

Immediately beneath that heading appears the following:

[One representative package to be sent to public store when merchandise is imported in packages of same contents and value, or when purchased at the same price per unit of weight, gauge, or measure. Department letters, Aug. 10 and 24, 1904, and May 12, 1914.]

Thereafter numerous items, several hundred in fact, are listed alphabetically, including, on page 71, "Electric-light bulbs, however packed, one each invoice."

It was the contention of counsel for the Government on the trial before the trial court and before the appellate division of the Customs Court, and it is their contention here, that the customs catalog, as amended, conforms to the law as announced by this court in the case of *United States* v. *Gilson Bros.*, 20 C. C. P. A. (Customs) 117, T. D. 45753, where it was held that a letter from the Treasury Department, dated May 12, 1914, addressed to the collector of customs at the port of New York, attempting to confer upon him the authority "to designate for examination and appraisement such number less than one package in ten of importations consisting of any of the commodities in the list submitted *as in your opinion the circumstances*

*will justify"* [italics supplied], was not a valid special regulation for the reason that the Secretary of the Treasury was without authority to delegate to the collector at the port of New York a power which the Congress, in section 2939 of the Revised Statutes, had expressly conferred upon the Secretary; that the amended customs catalog is a valid special regulation by the Secretary of the Treasury under section 499, *supra;* and that, as it appears from the record that more than 1 per centum of the packages covered by the invoices were designated by the collector for examination and were examined by the appraising officials at the port of New York, the appraisements by the local appraiser at that port were valid.

As to the merchandise imported at the port of Los Angeles, covered by reappraisements 112873–A and 112877–A, it was contended by counsel for the Government before the courts below, and it is contended here, that, although the collector at that port designated only a few packages of the merchandise to be sent to the public stores for examination, he required that all of the remaining packages be examined on the "dock"; that as the collector has authority, under and by virtue of the provisions of section 499, *supra,* to order merchandise "sent to the public stores or other places" to be examined for appraisement purposes, and as it will be presumed, there being no evidence to the contrary, that all of the merchandise was examined for appraisement purposes as directed by the collector, the appraisements by the local appraiser at the port of Los Angeles were valid.

The trial court was of opinion that, under the provisions of section 499, *supra,* the quoted telegram was a valid special regulation by the Secretary of the Treasury; that—

In addition, it recognizes Catalog 3418 as emanating from the Treasury Department, and, while in my judgment the telegram itself is a special regulation, the reference in the telegram to Catalog 3418 strengthens the proposition that both together were within the mind of the Secretary as relating to the merchandise involved; that both were within the power and province of the Secretary to issue; and that both of such instruments construed together constitute a valid special regulation. Such being my opinion, compliance therewith by the collector and appraiser would constitute a valid appraisement    *    *    *;

and that, therefore, the appraisements by the local appraiser at the port of New York were valid.

As to the Los Angeles entries, the trial court held that the collector had authority under the provisions of section 499, *supra,* to order that a part only of the merchandise be sent to public stores to be examined for appraisement purposes, and that the remainder be examined on the "dock"; that it would be presumed, there being no evidence to the contrary, that all of the merchandise had been examined for appraisement purposes; and that, therefore, the appraisements were valid. The trial court further held that in view of the concession by counsel

for the importers, hereinbefore stated, the values and prices of all of the merchandise here involved returned by the appraisers were correct, and judgment was entered accordingly.

On appeal, the appellate division of the Customs Court held that the quoted telegram from the Acting Secretary of the Treasury to the collector at the port of New York was not in itself a valid special regulation. The court gave its reasons for its views, which need not be stated here as it is not contended by counsel for either of the parties in this court that the quoted telegram is in itself a valid special regulation. Furthermore, it is apparent from the language of the telegram that it was not so intended by the Secretary of the Treasury, but that it was intended by him to be considered as an amendment to Customs Catalog 3418.

The appellate division of the Customs Court further disagreed with the trial court's holding that the quoted telegram, considered in connection with Customs Catalog 3418, was a valid special regulation under section 499, *supra;* the court stating in its decision—

In our opinion the telegram of the Acting Secretary of the Treasury in the instant case, taken in connection with customs catalog 3418, is a delegation to the collector of the port of New York of the opinion and judgment of the Secretary of the Treasury which the Court of Customs and Patent Appeals has held to be an unlawful delegation of power vested in the Secretary alone by the Congress.

Moreover, the effect of the said telegram, taken in connection with customs catalog 3418, is to repeal, so far as the great mass of merchandise enumerated in the various paragraphs of the Tariff Act of 1930 is concerned, the mandatory provision in section 499 of the said act enacted by the Congress for the protection of the Government revenues.

The court further held that, should it be proper to consider the quoted telegram as amending Customs Catalog 3418, the catalog, as amended, was not a valid special regulation for the reason that it was addressed and directed to the collector of customs at the port of New York only, and was not intended to apply to any other port in the United States. In so holding, the court stated that it was not unmindful of the decision by a majority of this court in the case of *United States* v. *C. J. Tower & Sons,* 24 C. C. P. A. (Customs) 304, T. D. 48754, wherein it was held that a special regulation, if otherwise issued in accordance with law, was not invalid because it was made to apply to a single port in the United States. The court also stated that it was greatly impressed with the dissenting opinion written by Associate Judge Garrett (now Presiding Judge), and that as there—

has been a change in the membership of the United States Court of Customs and Patent Appeals due to the untimely death of Presiding Judge Graham, and in view of the apparent prohibition in the Constitution of the United States already referred to and to which no reference was made in the majority opinion in said case,

we feel that the question of the validity of the purported special regulation, when addressed to the collector of customs at a single port, should again be presented to the United States Court of Customs and Patent Appeals.

Relative to the validity of the appraisements of the merchandise covered by the Los Angeles entries the appellate division called attention to article 307 (c) of the Customs Regulations, 1931, as modified by T. D. 45936, 62 Treas. Dec. 333, the pertinent part of which reads: "* * * If the merchandise is bulky, the collector will direct examination on the wharf or other suitable place, subject to the approval of the appraiser * * *," and, on the authority of the decision of the trial court in the case of *La Choy Food Products, Inc.*, v. *United States*, Reap. Dec. 4080, 72 Treas. Dec. 1008, affirmed by the Third Division of the United States Customs Court in *United States* v. *La Choy Food Products, Inc.*, Reap. Dec. 4230, 73 Treas. Dec. 1402, and on rehearing, Reap. Dec. 4319, 73 Treas. Dec. 1577, the case of *Carey & Skinner* v. *United States*, 16 Ct. Cust. Appls. 382, T. D. 43118, being cited in the decision of the trial court as controlling authority, held that, as the merchandise involved in the Los Angeles entries was neither bulky nor perishable, the collector's designation that less than one-tenth of the packages be sent to the public stores for examination and the remaining packages be examined "on the dock" was not in compliance with the mandatory provisions of section 499, *supra*.

In accordance with the views expressed in its decision, the court held that all of the appraisements by the local appraisers here under consideration were illegal and void, and, accordingly, reversed the judgment of the trial court.

Counsel for the Government contend in this court that the trial court's determination of values was valid, and should have been affirmed by the appellate division of the Customs Court, even if it be assumed that the appraisements by the local appraisers were illegal and void; that in view of the concession by counsel for appellees, made on the trial before the trial court, that the prices and values returned by the local appraiser were correct should the appraisements be held valid, no justiciable issue was presented to the appellate division of the Customs Court; and that the court erred in holding that the appraisements by the local appraisers were illegal and void.

In support of its contention that it was the duty of the appellate division of the Customs Court, as well as that of the trial court, to find values regardless of the validity of the appraisements by the local appraisers, our attention is called to several decisions of this court wherein it was held that it is the duty of those courts in reappraisement proceedings to find values if the evidence of record warrants such findings. We deem it unnecessary to refer to all of the cases cited and relied upon by counsel for the Government. One, however, which, so far as the issues here are concerned, may be said

to be typical is the case of *United States* v. *F. W. Woolworth Co. et al.*, 22 C. C. P. A. (Customs) 184, T. D. 47126, wherein it was held that under the plain mandates of section 501 of the Tariff Act of 1930, it was the duty of the trial court and the appellate division of the Customs Court in reappraisement proceedings to find value. However, we clearly pointed out in our decision in that case that—

* * * it may happen that elements essential to a legal appraisement may be lacking. Under such circumstances, where the appraisement of the local appraiser is found to be invalid, the tribunals of the Customs Court, of course, are unable to find value, and an anomalous situation is unavoidably created. Illustrative of such a situation is the case of *United States* v. *V. W. Davis, Sinai Kosher Sausage Factory*, 20 C. C. P. A. (Customs) 305, T. D. 46087. In that case this court affirmed the judgment of the Second Division of the United States Customs Court, which had affirmed the decision of the single judge holding that the appraisements of the local appraiser were null and void. Our own decision therein rested upon the ground that it had been shown that the local appraiser had failed to comply with the statutory requirements of section 499 of the Tariff Act of 1922 (held by us to be mandatory), in that he was shown to have examined less than 10 per centum of the barrels of pickeled beef there involved. Prior to the local appraiser's appraisement in that case all the merchandise had been released, no samples were retained, and the appraiser had no basis upon which to make a valid appraisement.

It is well settled that where it appears that an appraisement by a local appraiser is invalid and void, the trial court, on an appeal for reappraisement, and, in turn, the appellate division of the Customs Court, should so hold, and that, in such cases, neither of those courts has authority to find values. *United States* v. *V. W. Davis*, 20 C. C. P. A. (Customs) 305, T. D. 46087; *United States* v. *F. W. Woolworth Co. et al., supra; United States* v. *C. J. Tower & Sons*, 24 C. C. P. A. (Customs) 456, T. D. 48912.

As hereinbefore noted, this court, two members dissenting, held, in the case of *United States* v. *C. J. Tower & Sons*, 24 C. C. P. A. (Customs) 304, T. D. 48754, that a special regulation, issued under the provisions of section 499, *supra*, if otherwise conforming to the law, was not invalid because made applicable to a single port in the United States. In the instant case, the appellate division of the Customs Court refused to follow the decision in that case because it did not concur in the views expressed by the majority of this court. The principles announced by the majority of this court in that case have not been challenged here by counsel for either of the parties. We deem it unnecessary to say more than that a majority of the court adheres to the views expressed in the majority opinion in that case, the decision in which is controlling here, although Presiding Judge Garrett and the writer of this opinion are not persuaded that the views expressed in their dissenting opinions are fallacious.

It is argued here by counsel for appellees that prior to its amendment Customs Catalog 3418 was not a valid special regulation by

the Secretary of the Treasury, for the reason that it did not appear therefrom that the Secretary of the Treasury was of opinion that an examination of less than 1 package of every 10 packages of imported merchandise would amply protect the revenue, and that this court so held in the case of *United States* v. *Gilson Bros.*, *supra*.

The question before us in the instant case, however, is whether the catalog, as amended by the quoted telegram from the Acting Secretary of the Treasury, is a valid special regulation. Counsel for appellees argue that it is not; that it does not refer to "special goods"; that it is "broad enough to apply to all merchandise [imported at the port of New York] which is 'bought by sample or imported in packages of same contents and value or when purchased at the same price per unit of weight gauge or measure' "; that because of its broad terminology the customs catalog, as amended, "is virtually a delegation by the Secretary of the Treasury, to the Collector of Customs, of the discretion to determine in what instances less than one out of ten packages should be designated and examined"; and that the telegram from the Acting Secretary of the Treasury merely authorizes the collector to make a change in Customs Catalog 3418. It is further argued by counsel for appellees that should it be held that the amended catalog is a valid special regulation, the appraisements by the local appraiser at the port of New York are valid only as to the merchandise involved in reappraisments 112902–A and 112909–A; that such merchandise was "apparently imported in packages of the same contents and value"; that the special regulation would not be applicable to the merchandise involved in the other reappraisements here on appeal, because, it is stated, "there is nothing in the invoices or among any of the papers to indicate to the collector or anyone else that the merchandise was 'bought by sample' "; that the invoices disclose that they cover "various items invoiced and appraised at various prices," and, accordingly, were not " 'imported in packages of same contents and value' or 'purchased at the same price per unit.' "

As hereinbefore noted, following the amended heading on page 3 of Customs Catalog 3418, several hundred articles are listed alphabetically, including, on page 71, "Electric-light bulbs, however packed, one each invoice." Articles listed on the even-numbered pages may be examined on the wharf, and those listed on the odd-numbered pages are to be examined in the public stores. The last few pages of the catalog relate to other matters. They are: "List of imports, all of which shall be sent to public store, except as noted." "List of imports subject to special ordering for examination," "Underscore Merchandise," "Merchandise to be expedited," "Prohibited Importations," "Merchandise Requiring Deputy's Check Before Passing," "List of Bonded Warehouses for Storage of Mer-

chandise," "Bonded Warehouses for Storage of Teas," and "List of Warehouses bonded for the storage of teas awaiting examination as to purity."

It is evident, therefore, that the catalog, as amended, contains not only the alleged special regulation relating to the examination of less than 1 package in 10, but also several other matters.

We know of no reason, nor is any suggested by counsel for appellees, why a special regulation, issued under the provisions of section 499, *supra*, may not be included in a pamphlet, catalog, or book in which other special or general instructions or regulations are contained, nor do we know of any reason why a regulation would be any the less special *merely* because it was made applicable to many named or accurately described articles.

It appears from the catalog, as amended, that "in the opinion of the Secretary of the Treasury the examination at the Appraisers Stores on the wharf or elsewhere of samples or representative packages," of articles thereafter enumerated, "although constituting a less proportion than ten percent of the shipment is considered amply sufficient to protect the revenue," provided that such merchandise "is bought by sample *or* is imported in packages of same contents and value *or* when purchased at the same price per unit of weight gauge or measure, but in no case shall less than one percent be examined except upon specific authority from the Department." [Italics ours.]

The collector's determination that the electric-light bulbs imported at the port of New York were covered by the amended catalog is not in any sense a substitution of the collector's opinion for that of the Secretary of the Treasury that an examination of less than 1 package of every 10 packages of such articles "will amply protect the revenue," nor is there anything in the amended catalog to indicate an attempt by the Secretary of the Treasury to confer on the collector at the port of New York the power which the Congress expressly conferred upon the Secretary by section 499, *supra*.

We are of opinion, therefore, that Customs Catalog 3418, as amended, is a valid special regulation by the Secretary of the Treasury, assuming, as we must, there being no evidence to the contrary, that it was duly promulgated. *United States* v. *C. J. Tower & Sons*, 24 C. C. P. A. (Customs) 304, T. D. 48754.

Relative to the argument of counsel for appellees that the special regulation has no application to a considerable portion of the merchandise imported at the port of New York for the reason that "there is nothing in the invoices or among any of the papers to indicate to the collector or anyone else that the merchandise was 'bought by sample,' " that the invoices disclose that they cover "various items invoiced and appraised at various prices," and that the merchandise

covered such invoices was not " 'imported in packages of same contents and value' or 'purchased at the same price per unit,' " *it is* sufficient to say that, if it be assumed (we do not so hold) that, in cases of this character, the statements on the invoices may be considered as evidence favorable to importers, there is no statement on the involved invoices nor is there any other evidence of record to indicate that the involved merchandise was not "bought by sample." In the absence of such evidence, it will be presumed that it was, and that the collector so found. Furthermore, it is clear from the special regulations that if the therein enumerated or described merchandise conforms to any one of the three alternative requirements therein specified, the collector is authorized thereby to order that *less than 1 package of every 10 packages, but not less than one per centum,* be examined for appraisement purposes.

We are of opinion, therefore, that the appraisements by the local appraiser of the merchandise entered at the port of New York were valid, and that the trial court's findings that the values and prices returned by the local appraiser were correct should have been sustained by the appellate division of the Customs Court.

Relative to the appraisements by the local appraiser at the port of Los Angeles, little need be said. It is conceded by counsel for appellees that all of the involved merchandise imported at that port was designated by the collector for examination for appraisement purposes, and it will be presumed, there being no evidence to the contrary, that all of such merchandise was examined for appraisement purposes. It is true that less than 1 package of every 10 packages was ordered by the collector sent to the public stores for examination. However, all of the remaining merchandise was ordered examined at the "dock."

Counsel for appellees contend, and the appellate division of the Customs Court held, that as the merchandise was neither bulky nor perishable, the collector had no authority, in view of our decision in the case of *Carey & Skinner* v. *United States, supra,* and the quoted provisions of Article 307 (*c*) of the Customs Regulations, 1931, as amended, to direct that the merchandise be examined on the wharf.

In the *Carey & Skinner* case, *supra,* this court held that under the provisions of section 2901 of the Revised Statutes, then in force, the pertinent part of which read: "The collector shall designate on the invoice at least one package of every invoice, and one package at least of every ten packages of merchandise, and a greater number should he or either of the appraisers deem it necessary, imported into such port, to be opened, examined, and appraised, and shall order the package so *designated to the public stores for examination*" [italics ours], the collector was required by the mandatory provisions of that section to order that at least 1 package in 10 be sent to the *public*

*stores* for examination, unless the goods were either bulky or perishable, in either of which instances they might be ordered examined at the wharf or other suitable place. That decision was in conformity with the statute then in force, which required that at least 1 of every 10 packages of merchandise should be ordered sent *to the public stores for examination.* Section 499, *supra,* however, does not require that at least 1 of every 10 packages shall be sent to the public stores for examination, but, on the contrary, authorizes the collector to order the required number of packages "to be sent to the public stores *or other places*" for examination for appraisement purposes. [Italics ours.] That statutory authority cannot be, and in our opinion was not intended to be, qualified by the provisions of article 307 (*c*), *supra,* as amended. The provisions of that article merely require that "If the *merchandise is bulky,* the collector will direct examination on the wharf or other suitable place, subject to the approval of the appraiser." [Italics ours.]

We are of opinion, therefore, that the appraisements by the local appraiser at the port of Los Angeles were valid, and that the trial court's findings that the values and prices returned by the local appraiser were correct should have been sustained by the appellate division of the Customs Court.

For the reasons herein stated, the judgment of the appellate division of the Customs Court is *reversed.*